# GEGIOW *v.* UHL, ACTING COMMISSIONER OF IMMIGRATION AT THE PORT OF NEW YORK.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 340. Argued October 14, 15, 1915.—Decided October 25, 1915.

The courts have jurisdiction to determine whether the reasons given by the Commissioner of Immigration for excluding aliens under the Alien Immigration Act agree with the requirements of the Act;

and, if the record shows that the Commissioner exceeded his powers, the alien may obtain his release upon *habeas corpus*.

The Alien Immigration Act by enumerating conditions upon which aliens may be denied admission prohibits the denial of admission in other cases.

The conclusiveness of the decisions of immigration officers under § 25 of the Immigration Act is conclusiveness of questions of fact; but the court may review the findings of a Commissioner on the question of whether the alien comes under the Act. *Gonzales* v. *Williams*, 192 U. S. 1.

An alien cannot be excluded under the Alien Immigration Act simply because the immigration officers declare that he may become a public charge on account of overstocked conditions of the labor market at the point of immediate destination.

Under § 1 of the Alien Immigration Act, the ground of exclusion of persons enumerated are permanent personal objections irrespective of local conditions.

A phrase contained in a list such as that of disabilities in § 1 of the Alien Immigration Act is to be read as generically similar to the others mentioned before and after.

The Alien Immigration Act deals with admission of aliens to the United States and not to particular points of destination therein.

Where the determination of a class of questions covered by a statute is left to the President, this court will not presume that a greater power is entrusted by implication to subordinate officers or that the same result can be effected under the guise of a decision.

215 Fed. Rep. 573, reversed.

THE facts, which involve the construction of the Alien Immigration Act and the power of the Commissioner of Immigration to exclude aliens on the ground of likelihood of their becoming a public charge, are stated in the opinion.

*Mr. Max J. Kohler* and *Mr. Morris Jablow*, with whom *Mr. Abram I. Elkus* and *Mr. Ralph Barnett* were on the brief, for petitioners:

Alien immigrants are entitled to due process of law under the Fifth Amendment, and under § 25 of the Immigration Law, and generally under our treaties with foreign

countries. It is a denial of due process of law to deny proper hearing or to order deportation on undisclosed assumption of controverted facts and denial of opportunity to meet them, and grave irregularities on the hearing of the appeal thereon, as it is also where there is no competent evidence whatsoever justifying an exclusion.

Even as regards matters that may be judicially noticed, without formal proof, the matter relied upon must be specifically referred to on the trial, and produced, so that the immigrant may know what is relied upon to exclude him, and can meet it by proof.

Even if boards of special inquiry have the powers of courts, to take judicial notice of facts which courts might notice judicially, when properly presented before them, still even courts cannot notice judicially such facts as are here involved, under the authorities governing judicial notice, especially on the basis of alleged newspaper reports, not produced or even identified.

The immigration authorities are not authorized to exclude aliens on the supposed ground of unfavorable industrial conditions in the place to which they are destined, because such factor is not one vested in the immigration authorities by Congress as a justifiable ground for exclusion, nor are the petty immigration officials competent to pass upon such uncertain and complicated, ever-varying, conditions; nor is any satisfactory method of apprising them of the same provided by law; nor on the other hand, are the immigrants wedded to any particular destination, but are quite certain to go to a place economically more desirable than their original proposed destination, if conditions in the latter place so suggest.

Where the courts on *habeas* assume jurisdiction to review an order of exclusion, they are themselves to determine the question of admissibility, and not merely to remand relator for a new hearing to the immigration authorities.

*The Solicitor General* for respondent:

Congress has power to make the fact of a favorable administrative decision the condition of entry of aliens, withholding from the courts jurisdiction to review the evidence on which the decision is based.

Congress has complete power to exclude all aliens and to determine the conditions of their entry. *Lapina* v. *Williams*, 232 U. S. 78, 88; *United States* v. *Ju Toy*, 198 U. S. 253, 261.

The administrative determination made the condition of entry need not be based upon a hearing at which the alien has an opportunity to present evidence. *Buttfield* v. *Stranahan*, 192 U. S. 470; *Oceanic Navigation Co.* v. *Stranahan*, 214 U. S. 320; *Origet* v. *Hedden*, 155 U. S. 228.

When Congress has made a favorable administrative decision the sole and indispensable condition precedent to entry, and has declared an adverse decision to be final, the courts have no power to review the evidence upon which the latter is based. *Nishimura Ekiu* v. *United States*, 142 U. S. 651, 660.

In the Immigration Act Congress has made the fact of the decision by immigration officials the sole condition of entry. The fact of the decision being established, any inquiry into the evidence is improper.

The act by § 25 declares that the adverse administrative decision shall be final. *Pearson* v. *Williams*, 202 U. S. 281.

The statute imports that want of any sustaining evidence shall not of itself constitute a ground for judicial impeachment of the adverse administrative decision.

The officers do not lose exclusive jurisdiction by judging all the evidence erroneously. *Chin Yow* v. *United States*, 208 U. S. 8, 13; *Harlan* v. *McGourin*, 218 U. S. 442.

Want of any sustaining evidence in the record does not *per se* establish fraud or lack of good faith. *Gregory* v.

*White,* 213 Fed. Rep. 768; *Nishimura Ekiu* v. *United States, supra.*

Under this act the courts have no jurisdiction to review the evidence. *Fok Yung Yo* v. *United States,* 185 U. S. 296; *Fong Yue Ting* v. *United States,* 149 U. S. 698; *Gregory* v. *White, supra; Lee Gon Yung* v. *United States,* 185 U. S. 306; *Lee Lung* v. *Patterson,* 186 U. S. 175; *Lem Moon Sing* v. *United States,* 158 U. S. 538; *Nishimura Ekiu* v. *United States, supra.*

Cases under statutes providing for administrative proceedings of a different kind are not applicable. *Int. Com. Comm.* v. *Louis. & Nash. R. R.,* 227 U. S. 88; *Lewis* v. *Frick,* 233 U. S. 291; *American School* v. *McAnnulty,* 187 U. S. 94; *Zakonaite* v. *Wolf,* 226 U. S. 272.

Petitioners' contentions that they had no opportunity to cross-examine opposing witnesses or to know the evidence against them, or to rebut opposing evidence, are not valid.

The Immigration Act does not entitle the alien to confront and cross-examine witnesses.

The hearing provided in the act need not be such that the alien has opportunity to know adverse evidence and rebut it.

The evidence before the board supports their determination that petitioners were likely to become a public charge. *Auffmordt* v. *Hedden,* 137 U. S. 310; *Buttfield* v. *Stranahan,* 192 U. S. 470; *Chicago Ry. Co.* v. *Babcock,* 204 U. S. 585; *Chin Yow* v. *United States,* 208 U. S. 8; *Coyne Publishing Co.* v. *Paine,* 194 U. S. 497; *Davidson* v. *New Orleans,* 96 U. S. 97; *Ex parte Gregory,* 210 Fed. Rep. 680; *Fok Yung Yo* v. *United States,* 185 U. S. 296; *Fong Yue Ting* v. *United States,* 149 U. S. 698; *Glasgow* v. *Moyer,* 225 U. S. 420; *Gregory, Matter of,* 219 U. S. 210; *Harlan* v. *McGourin,* 218 U. S. 442; *Healy* v. *Backus,* 221 Fed. Rep. 358; *Interstate Com. Comm.* v. *L. & N. R. R.,* 227 U. S. 88; *Japanese Immigrant Case,* 189 U. S. 86; *Lapina* v. *Wil-*

*liams,* 232 U. S. 78; *Lee Gon Yung* v. *United States,* 185
U. S. 306; *Lee Lung* v. *Patterson,* 186 U. S. 168; *Lem Moon
Sing* v. *United States,* 158 U. S. 538; *Lewis* v. *Frick,* 233
U. S. 291; *Low Wah Suey* v. *Backus,* 225 U. S. 460; *Nishi-
mura Ekiu* v. *United States,* 142 U. S. 651; *Oceanic Nav-
igation Co.* v. *Stranahan,* 214 U. S. 320; *Origet* v. *Hedden,*
155 U. S. 228; *Pearson* v. *Williams,* 202 U. S. 281.

MR. JUSTICE HOLMES delivered the opinion of the court.

The petitioners are Russians seeking to enter the United
States. They have been detained for deportation by the
Acting Commissioner of Immigration and have sued out
a writ of *habeas corpus.* The writ was dismissed by the
District Court and the Circuit Court of Appeals. 211
Fed. Rep. 236. 215 Fed. Rep. 573. 131 C. C. A. 641. By
the return it appears that they are part of a group of
illiterate laborers, only one of whom, it seems, Gegiow,
speaks even the ordinary Russian tongue, and in view of
that fact it was suggested in a letter from the Acting Com-
missioner to the Commissioner General that their ig-
norance tended to make them form a clique to the detri-
ment of the community; but that is a trouble incident to
the immigration of foreigners generally which it is for
legislators not for commissioners to consider, and may be
laid on one side. The objection relied upon in the return
is that the petitioners were "likely to become public
charges for the following, among other reasons: That they
arrived here with very little money, [$40 and $25, re-
spectively,] and are bound for Portland, Oregon, where
the reports of industrial conditions show that it would be
impossible for these aliens to obtain employment; that
they have no one legally obligated here to assist them;
and upon all the facts, the said aliens were upon the said
grounds duly excluded" &c. We assume the report to
be candid, and, if so, it shows that the only ground for

the order was the state of the labor market at Portland at that time; the amount of money possessed and ignorance of our language being thrown in only as makeweights. It is true that the return says for that 'among other reasons.' But the state of the labor market is the only one disclosed in the evidence or the facts that were noticed at the hearing, and the only one that was before the Secretary of Labor on Appeal; and as the order was general for a group of twenty it cannot fairly be interpreted to stand upon reasons undisclosed. Therefore it is unnecessary to consider whether to have the reasons disclosed is one of the alien's rights. The only matter that we have to deal with is the construction of the statute with reference to the present case.

The courts are not forbidden by the statute to consider whether the reasons, when they are given, agree with the requirements of the act. The statute by enumerating the conditions upon which the allowance to land may be denied, prohibits the denial in other cases. And when the record shows that a commissioner of immigration is exceeding his power, the alien may demand his release upon *habeas corpus.* The conclusiveness of the decisions of immigration officers under § 25 is conclusiveness upon matters of fact. This was implied in *Nishimura Ekiu* v. *United States,* 142 U. S. 651, relied on by the Government. As was said in *Gonzales* v. *Williams,* 192 U. S. 1, 15, "as Gonzales did not come within the act of 1891, the Commissioner had no jurisdiction to detain and deport her by deciding the mere question of law to the contrary." Such a case stands no better than a decision without a fair hearing, which has been held to be bad. *Chin Yow* v. *United States,* 208 U. S. 8. See further *Zakonaite* v. *Wolf,* 226 U. S. 272. *Lewis* v. *Frick,* 233 U. S. 291, 297.

The single question on this record is whether an alien can be declared likely to become a public charge on the ground that the labor market in the city of his immediate

destination is overstocked. In the act of February 20, 1907, c. 1134, § 2; 34 Stat. 898; as amended by the act of March 26, 1910, c. 128, § 1; 36 Stat. 263, determining who shall be excluded, 'Persons likely to become a public charge' are mentioned between paupers and professional beggars, and along with idiots, persons dangerously diseased, persons certified by the examining surgeon to have a mental or physical defect of a nature to affect their ability to earn a living, convicted felons, prostitutes and so forth. The persons enumerated in short are to be excluded on the ground of permanent personal objections accompanying them irrespective of local conditions unless the one phrase before us is directed to different considerations than any other of those with which it is associated. Presumably it is to be read as generically similar to the others mentioned before and after.

The statute deals with admission to the United States, not to Portland, and in § 40 contemplates a distribution of immigrants after they arrive. It would be an amazing claim of power if commissioners decided not to admit aliens because the labor market of the United States was overstocked. Yet, as officers of the General Government, they would seem to be more concerned with that than with the conditions of any particular city or State. Detriment to labor conditions is allowed to be considered in § 1, but it is confined to those in the continental territory of the United States and the matter is to be determined by the President. We cannot suppose that so much greater a power was entrusted by implication in the same act to every commissioner of immigration, even though subject to appeal, or that the result was intended to be effected in the guise of a decision that the aliens were likely to become a public charge.

*Order reversed.*