PERA et al. v. WHITE, Commissioner of Immigration.

(Circuit Court of Appeals, Ninth Circuit. November 20, 1922.)

No. 3884.

Aliens ⬤⟲51½, New, vol. 16A Key-No. Series—Persians included in group of "other Asians" for purpose of limitation of immigration.

> Under Immigration Act May 19, 1921, restricting immigration of aliens of any nationality in any fiscal year to 3 per cent. of the number of foreign-born persons of such nationality resident in the United States as determined by the census of 1910, resident aliens from Persia, Rhodes, Cyprus, Hedjaz and Iraq, not separately enumerated in such census, but grouped together as "other Asians," *held* to constitute a unit for the purpose of determining the percentage, and when aliens from all such countries have been admitted to the limit of 3 per cent. in any fiscal year, no more may be admitted from any one of them.

Appeal from the District Court of the United States for the First Division of the Northern District of California; Frank S. Dietrich, Judge.

Habeas corpus by Odeshoo Pera and Martha Pera against Edward White, Commissioner of Immigration at the Port of San Francisco. Judgment for defendant, and petitioners appeal. Affirmed.

Preston & Duncan and Thos. W. Firby, all of San Francisco, Cal., for appellants.

John T. Williams, U. S. Atty., and Ben F. Geis, Asst. U. S. Atty., both of San Francisco, Cal., for appellee.

Before GILBERT and HUNT, Circuit Judges, and WOLVERTON, District Judge.

HUNT, Circuit Judge. Appellants, who are Persians, left Persia in July, 1918, and went to Mesopotamia, and left there for the United States prior to the date of the taking effect of the Immigration Act of May 19, 1921. Upon arrival at San Francisco in January, 1922,

they were denied admission upon the ground that the quota of aliens of Persian nationality who could be legally admitted into the United States had already been exceeded.

As it is conceded that at the time of their arrival in San Francisco appellants could have been admitted under the provisions of the general Immigration Act of February 5, 1917 (39 St. L. 874 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 959, 960, 4289¼a–4289¼u]), the question is whether, under the act of May 19, 1921, it was lawful to exclude them.

The act of May 19, 1921 (U. S. St. 1921, vol. 42, p. 5), is entitled "An act to limit the immigration of aliens into the United States," and section 2, subd. "a," provides:

"That the number of aliens of any nationality who may be admitted under the immigration laws of the United States in any fiscal year shall be limited to three per centum of the number of foreign born persons of such nationality resident in the United States as determined by the United States census of 1910."

Subdivision "b" of section 2 provides:

"For the purposes of this act nationality shall be determined by the country of birth, treating as separate countries the colonies or dependencies for which separate enumeration was made in the United States census of 1910."

By subdivision "c" of section 2, it is provided:

"The Secretary of State, the Secretary of Commerce, and the Secretary of Labor, jointly, shall, as soon as feasible after the enactment of this act, prepare a statement showing the number of persons of various nationalities resident in the United States as determined by the United States census of 1910, which statement shall be the population basis for the purposes of this act."

In the subdivision just quoted provision is made for the possible changes in the political boundaries occurring subsequent to 1910, and requiring that, for the purposes of the act generally, aliens born in the area included in any such new country shall be regarded as having been born in such country, and aliens born in any territory transferred are to be considered as having been born in the country to which such country was transferred. Subdivision "d" of section 2 provides that, when the maximum number of aliens of any nationality who may be admitted in any fiscal year under the act shall have been admitted—

"all other aliens of such nationality, except as otherwise provided in this act, who may apply for admission during the same fiscal year, shall be excluded; provided, that the number of aliens of any nationality who may be admitted in any month shall not exceed twenty per centum of the total number of aliens of such nationality who are admissible in that fiscal year."

Provision is then made for aliens returning from temporary visits, or aliens engaged in certain pursuits, who may be admitted, notwithstanding the maximum number of aliens of the same nationality admissible in the same month or fiscal year. Provisions are also made for preferences to be accorded to wives, children, and others. Section 3 of the act makes it the duty of the Commissioner General of Immigration, with the approval of the Secretary of Labor, to prescribe rules and regulations to carry the provisions of the act into effect.

"He shall, as soon as feasible after the enactment of this act, publish a statement showing the number of aliens of the various nationalities who may be admitted to the United States between the date this act becomes effective and the end of the current fiscal year, and on June 30 thereafter he shall publish a statement showing the number of aliens of the various nationalities who may be admitted during the ensuing fiscal year."

Monthly publications are required showing the number of aliens—

"of each nationality already admitted during the then current fiscal year and the number who may be admitted under the provisions of this act during the remainder of such year, but when seventy-five per centum of the maximum number of any nationality admissible during the fiscal year shall have been admitted such statements shall be issued weekly thereafter."

Statements are made available for publication and are to be transmitted to the proper diplomatic and consular officers who shall make the same available to persons intending to emigrate to the United States and to others who may arrive. By joint resolution, approved August 22, 1921, Congress provided that aliens of any nationality brought to the United States on vessels which departed from foreign ports on or before June 8, 1921, destined for the United States, and who applied in the month of June, 1921, for admission, might, if otherwise admissible, be admitted, although the limit prescribed by section 5 of the act approved May 19, 1921, supra, may have been reached before such application for admission. The resolution also provided that the number of aliens of any nationality so admitted shall be deducted under regulations from the number of aliens of that nationality admissible during the fiscal year beginning July 1, 1921, under the provisions of the act of May, 1921, and that nothing in the resolution should prohibit the admission of otherwise admissible aliens of any nationality during July, 1921, up to 20 per cent. of the number of aliens of that nationality admissible during such fiscal year under the provisions of the act of May 19, 1921.

It is admitted that no separate enumeration was made in the census of 1910 of the number of foreign-born persons resident in the United States from Persia, Rhodes, Cyprus, Hedjaz, or Iraq, countries included in the territory described as "other Asia," but that such foreign-born persons were grouped in one grand total under "other Asians."

Appellants argue that, inasmuch as there was no statement or finding in the United States census of 1910 as to the number of foreign-born persons of Persian nationality, there was no basis upon which the Secretary of State and other officials could formulate the statement provided for in subdivision c of section 2, hereinbefore quoted, and that as a consequence no statement could be prepared by which could be shown the number of aliens of Persian nationality already admitted during the then current fiscal year, or the number who might be admitted under the provisions of the act during the remainder of the year.

To adopt such a construction would be to overlook the larger and expressed purpose of the legislation, which is to establish a limitation upon the immigration aliens of any nationality, and in practical effect would permit of unrestricted immigration of aliens from many countries where the census of 1910 made group enumerations, unless the

aliens are excepted by the provisions of the act. In the present case, although in the census of 1910 Persia was not separately enumerated, it was included within territory described as "other Asia," as were Rhodes, Cyprus, and certain territory other than Siberia. The inclusion could not be disregarded, and the authorities charged with the duty of preparing a statement showing the number of persons of the various nationalities resident in the United States, as determined by the census of 1910, properly took the group as a unit by which the limit prescribed should be found.

Keeping in mind the intent of the law, we read its provisions as clear in extending to aliens from Persia as included within "other Asia."

The judgment is affirmed.