### Ex parte HARALAMPOPOULOS. Ex parte MANTZOURANIS. Ex parte STRATEGES.

(District Court, D. Massachusetts. January 26, 1923.)

Nos. 2328–2330.

1. **Aliens ☞51½, New, vol. 16A Key-No. Series—Right of aliens born in Rhodes to admission governed by quota of Turkey.**

The right of aliens born in the Island of Rhodes, when it was under Turkish sovereignty, to admission, under the percentage limitation of Immigration Act May 19, 1921, § 2, as amended by Resolution May 11, 1922, is governed by the quota admissible from Turkey; no transfer of Rhodes to another sovereignty having been recognized by the United States.

2. **Aliens ☞51½, New, vol. 16A Key-No. Series—Commissioner without authority to transfer immigrant nationals to divisions arbitrarily created by him.**

Under Immigration Act May 19, 1921, as amended by Resolution May 11, 1922, neither the quota board provided for by section 2 (c), nor the Commissioner General, under section 3, has authority to arbitrarily construct a geographical division in Asia and assign to that division nationals who were born in a country which was treated as a separate country in the census of 1910.

3. **Habeas corpus ☞111(1)—Aliens unlawfully excluded entitled to release.**

Where it appears from the record that the Commissioner of Immigration has exceeded his authority in denying right of admission, a court has power to release the alien on writ of habeas corpus.

Petitions by Spiros Haralampopoulos, by Panagiotis Mantzouranis, and by Christos Strateges for writs of habeas corpus. Writs granted.

Lawrence G. Brooks, of Boston, Mass., for petitioners.
The United States Attorney, opposed.

BREWSTER, District Judge. These three aliens, in a second attempt to enter this country, arrived at Providence, R. I., October 1, 1922. After a hearing before the board of special inquiry at Boston, Mass., they were excluded as "coming in excess of the quota allowed nationals of the country of their birth, namely, Island of Rhodes (Other Asia), in accordance with the Act of May 19, 1921, as amended by the Act of May 11, 1922." On appeal, after hearing before the board of review, the excluding decision of the board of special inquiry was affirmed by the Commissioner General of Immigration. It was contended by the applicants that they ought not to have been excluded, as coming in excess of the quota, for the reason that the island of Rhodes, at the time of the birth of the applicants, was under Turkish sovereignty, and that the quota for Turkey was not exhausted.

[1] The Act of May 19, 1921, as amended (42 Stat. 5, 540), under which the aliens were excluded, provides that the number of aliens of any nationality who may be admitted under the immigration laws to the United States in any fiscal year shall be limited to 3 per cent. of the number of foreign-born persons of such nationality resident in the United States, as determined by the United States census of 1910. Then follow certain exceptions not now important. Section 2 (a).

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The act also provides that nationality shall be determined by the country of birth, treating as separate countries the colonies or dependencies for which separate enumeration was made in the United States census of 1910 (section 2 [b]), and that the Secretary of State, the Secretary of Commerce, and the Secretary of Labor shall prepare a statement showing the number of persons of the various nationalities resident in the United States, as determined by the United States census of 1910, which statement shall be the population basis for the purposes of the act. Then follow provisions to govern in case of changes in political boundaries in foreign countries occurring subsequent to 1910, resulting in the creation of new countries or transfer of territory, providing such creation or transfer is recognized by the United States. Section 2 (c).

There is no country, colony, or dependency for which separate enumeration was made in the United States census of 1910 known as "Other Asia." It was a phrase adopted in the census of 1910 to describe those countries of Asia whose nationals were residents in the United States in such small number as to render their separate enumeration difficult. For the purpose of the census, the island of Rhodes was not within the territory designated as "Other Asia."

At the time of the birth of the applicants the island of Rhodes was under Turkish sovereignty, and no transfer of this sovereignty to any other power had ever been recognized by the United States. In the census of 1910 no separate enumeration of the island of Rhodes was made.

[2] Either the board provided for in section 2 (c) of the act, hereinafter called the "Quota Board," or the Commissioner General of Immigration, under section 3 of the act, it does not appear which, included the island of Rhodes in the territory designated as "Other Asia." Congress, in enacting sections 2 (b) and 2 (c), clearly established the rule by which nationality of aliens should be determined, and these provisions would seem to leave no discretion in either the Quota Board or the Commissioner General of Immigration respecting such determination, and the rule applies to the nationality of aliens seeking admission as well as to aliens already within the country. Neither the Quota Board nor the Commissioner General of Immigration had any authority to arbitrarily construct a geographical division in Asia, and assign nationals to that division when such nationals had been born in a country which was treated as a separate country in the enumeration of 1910.

[3] It remains to be considered whether, in view of the congressional legislation and the facts above set forth, this court has authority to issue a writ of habeas corpus. It was held in Nishimura v. United States, 142 U. S. 661, 12 Sup. Ct. 338, 35 L. Ed. 1146, that:

"An alien immigrant, prevented from landing by an officer claiming authority to do so under an act of Congress, and thereby restrained of his liberty, is doubtless entitled to a writ of habeas corpus to ascertain whether the restraint is lawful."

And again, in Gegiow v. Uhl, 239 U. S. 3, 36 Sup. Ct. 2, 60 L. Ed. 114, Mr. Justice Holmes observes that:

286 F.—28

"The courts are not forbidden by the statute to consider whether the reasons, when they are given, agree with the requirements of the act. The statute, by enumerating the conditions upon which the allowance to land may be denied, prohibits the denial in other cases. And when the record shows that a commissioner of immigration is exceeding his power, the alien may demand his release upon habeas corpus. The conclusiveness of the decisions of immigration officers under section 25 is conclusiveness upon matters of fact."

The immigration authorities had no right to exclude these aliens, unless they were excluded by the provisions of the Act of May 19, 1921, as amended. From the evidence presented at the hearing upon the petition for a writ of habeas corpus, I find that the quota for nationals coming from Turkey was not exhausted, and that if the aliens had been treated as nationals of Turkey they could have been admitted. Inasmuch as these aliens did not come within the act of 1921, the Commissioner had no jurisdiction to detain or deport them. Gonzales v. Williams, 192 U. S. 1, 24 Sup. Ct. 177, 48 L. Ed. 317.

"Such a case stands no better than a decision without a fair hearing, which has been held to be bad." Gegiow v. Uhl, 239 U. S. 3, 36 Sup. Ct. 2, 60 L. Ed. 114.

See, also, Ng Fong Ho v. White, 259 U. S. 276, 42 Sup. Ct. 492, 66 L. Ed. ——; Ex parte Gregory (D. C.) 210 Fed. 680.

In the case of Christos Strateges, No. 2330, the exclusion decision was based upon the additional reason that he returned to the United States within one year of the date of his previous exclusion without having obtained the consent of the Secretary of Labor to reapply. It was stated in court that the immigration authorities were willing to waive this ground for exclusion, if it should be held that the alien would be otherwise entitled to enter.

The petitions in case No. 2328, Spiros Haralampopoulos, and case No. 2329, Panagiotis Mantzouranis, are granted, and writs of habeas corpus may issue in these cases.

In case No. 2330, Christos Strateges, the petition for writ of habeas corpus will be granted whenever, by stipulation or other proper entry in the case, it has been made to appear that the immigration authorities waive the fact that he returned to the United States within one year of previous exclusion. Upon such waiver being made effective, a writ of habeas corpus may issue in this case.