HUGHES, Com'r of Immigration, v. UNITED STATES ex rel. BRANZETTI et al. SAME v. UNITED STATES ex rel. FRANCESCONI. SAME v. UNITED STATES ex rel. CECCOLI.

(Circuit Court of Appeals, Third Circuit. October 2, 1924.)

Nos. 3137–3139.

1. Aliens �kö 51½, New, vol. 16A Key-No. Series—Natives of San Marino could not be excluded merely because quota allotted to "other Europe" exhausted.

Under Act May 19, 1921, § 2, subds. (a)–(c), and section 3 (Comp. St. Ann. Supp. 1923, §§ 4289½a, 4289½b), immigrants from San Marino, the natives of which were grouped collectively with natives of other small countries as "other Europe" in census, could not be excluded merely because quota allotted to "other Europe" had been exhausted, if San Marino was a separate and distinct country, and if not a separate and distinct entity the Italian quota would be applicable.

2. Aliens �kö 54—Decision of immigration officers conclusive, if not arbitrary or in bad faith, and supported by evidence.

Decision of immigration officers is final and conclusive on the courts, if not made arbitrarily or in bad faith and supported by evidence.

3. Aliens �kö 54—Order for deportation of children because of exclusion of mother held not conclusive, where mother was not in fact excess quota.

Order of immigration officers for deportation of children, on the ground that they would likely become public charges because mother had been excluded as excess quota, was not conclusive on court, where mother was in fact not excess quota, and the board was without legal power to exclude her.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Habeas corpus proceedings, by the United States of America on the relation of Maria Branzetti and others, on the relation of Marino Francesconi, and on the relation of Domenico Ceccoli, against James L. Hughes, Commissioner of Immigration. From orders discharging relators, the Commissioner of Immigration appeals. Affirmed.

George W. Coles, U. S. Atty., and William J. Brady, Sp. Asst. U. S. Atty., both of Philadelphia, Pa., for appellant.

Adrian Bonnelly, of Philadelphia, Pa., for appellees.

Before WOOLLEY and DAVIS, Circuit Judges, and MORRIS, District Judge.

MORRIS, District Judge. In September, 1923, there arrived at the port of Philadelphia the appellees, Domenico Ceccoli, Marino Francesconi, Maria Branzetti, the latter's daughter, Giuseppina Giovagnoli, all natives of the republic of San Marino, and two minor children of Maria Branzetti, namely, Fernanda Giovagnoli and Norina

1 F. (2d)—27

Giovagnoli, who were born in Italy. They desired to enter this country. After a hearing they were all excluded by the board of inquiry—the four first named "as coming in in violation of the Act of Congress of May 19, 1921, as amended by the Act of May 11, 1922, in that the quota allotted to the country of which the said aliens were nationals, to wit, republic of San Marino (other Europe), was exhausted for the month of September, 1923," and the remaining two, natives of Italy, "as persons likely to become public charges." Upon appeal the action of the board of inquiry was affirmed. An order of deportation was then issued. Thereupon writs of habeas corpus were sought and granted. After hearing the court below ordered the discharge of each of the aliens. From each of those orders the commissioner of immigration has appealed to this court.

[1] The exclusion of the appellees, natives of that republic, was based solely upon the fact that in the census of 1910 there had been no separate enumeration of natives of San Marino then resident in the United States; that in the census of 1910 such persons, together with the natives of Gibraltar and some other small countries, had been collectively grouped and designated as "other Europe"; that, consequently, no separate quota had been or could be allotted to San Marino; that a quota had been allotted to "other Europe," and that prior to the arrival of the appellees that quota had been exhausted for the month of September by the arrival and admission into this country of natives of Gibraltar. During the part of September which preceded the arrival of the appellees no natives of San Marino had applied for admission or been admitted into this country. As it is not disputed that, unless excluded by the act of 1921 entitled "An act to limit the immigration of aliens into the United States" (42 Stat. 5 [Comp. St. Ann. Supp. 1923, §§ 4289½–4289½dd]), the appellees who are natives of San Marino were entitled to enter the United States, and as it is not disputed that "the statute, by enumerating the conditions upon which the allowance to land may be denied, prohibits the denial in other cases" (Gegiow v. Uhl, 239 U. S. 3, 36 Sup. Ct. 2, 60 L. Ed. 114), the sole question presented with respect to the natives of San Marino, assuming that country to be a separate and independent nation, is whether there was authority for the limitation of immigrants from that country by a quota allotted to that and other countries jointly.

The act of 1921 provides:

"Sec. 2(a) That the number of aliens of any nationality who may be admitted under the immigration laws to the United States in any fiscal year shall be limited to 3 per centum of the number of foreign born persons of such nationality resident in the United States as determined by the United States census of 1910. * * *

"(b) For the purposes of this act nationality shall be determined by country of birth, treating as separate countries the colonies or dependencies for which separate enumeration was made in the United States census of 1910.

"(c) The Secretary of State, the Secretary of Commerce, and the Secretary of Labor, jointly, shall, as soon as feasible after the enactment of this Act, prepare a statement showing the number of persons of the various nationalities resident in the United States as determined by the United States census of 1910, which statement shall be the population basis for the purposes of this act."

Section 4289½a.

Section 3 of the act (section 4289½b) directs that the Commissioner General of Immigration " * * * shall, as soon as feasible after the enactment of this act, publish a statement showing the number of aliens of the various nationalities who may be admitted to the United States between the date this act becomes effective and the end of the current fiscal year, and on June 30 thereafter he shall publish a statement showing the number of aliens of the various nationalities who may be admitted during the ensuing fiscal year."

Obviously no provision is made by the statute for its functioning independently of "nationality." Yet it is equally manifest that any limitation upon immigration under the statute is not to spring from "nationality" alone. It is to exist only as the product of nationality coacting with the United States census of 1910 for "such nationality." No provision is made for any limitation upon immigration where either of the elements —nationality or census—which give rise to the limitation is lacking. It is true that section 2 (b) of the act provides for an allotment for certain colonies separate from the allotment for the country of which they are colonies. But nowhere does the act provide for or permit an omnibus allotment for separate and distinct countries. The act left the political status of the countries of the world as it found it. The act created

no new country or nation. Nor did the census for 1910 do so. The grouping in that census of the nationals, here resident, of several separate and distinct countries under the caption "other Europe" served to create neither a de jure nor a de facto country by that name.

Although the general purpose of the act was to limit immigration, yet it made such purpose effective only as to the nationalities for which a quota could be made and allotted under the terms of the act. The immigration authorities were not empowered to supply intentional or unintentional statutory omissions. Consequently, and after a consideration of the varying views expressed in Pera v. White (C. C. A.) 284 Fed. 699, Ex parte Haralampopoulos (D. C.) 286 Fed. 432, and Lacas v. Curran (C. C. A.) 297 Fed. 219, we think that if San Marino is a separate and distinct political entity, and not a colony or dependency of another nation, there was no legal ground for the exclusion of the appellees who were natives of that country. But if, perchance, San Marino is not an wholly separate and independent political entity, it is an imperium in imperio, and in this sense a dependency of Italy, by which it is completely surrounded. As no separate enumeration was made in the census of 1910 of the natives of San Marino here resident, the Italian · quota would have applied under the terms of the statute to persons born in such Italian dependency. And as the Italian quota had not been exhausted for the month of September at the time of the arrival of the appellees there was upon this hypothesis, as upon the former, no legal ground for the exclusion of the appellees who were born in San Marino.

[2, 3] Fernanda Giovagnoli and Norina Giovagnoli, who were born in Italy and who were aged 12 and 8 years respectively, were excluded by the board of inquiry "as persons likely to become public charges for the reasons that their mother has been excluded as excess quota, and that, being of tender years, they have no one in the United States who could look after them properly in the mother's place." The decision of immigration officers is final and conclusive upon the courts, if it is not made arbitrarily or in bad faith and finds support in the evidence. Kwock Jan Fat v. White, 253 U. S. 454, 40 Sup. Ct. 566, 64 L. Ed. 1010. There is no suggestion on the part of the appellees that the decision with respect to Fernanda and Norina was made otherwise than in the

best of faith, or that it was not based upon the most humanitarian grounds. But the sole support found in the record for the decision is that fairly and frankly stated by the board of inquiry as above set forth. Consequently, the board having been found by us to be without legal power to exclude the mother, and as she is to be admitted, the sole reason for the decision with respect to Fernanda and Norina fails, and the decision finds nothing in the record to support it. Under such circumstances it is not binding upon the courts. Zakonaite v. Wolf, 226 U. S. 272, 274, 33 Sup. Ct. 31, 57 L. Ed. 218.

The order of the court below in each case must be affirmed, and the bonds given by the aliens in the court below discharged.