## SKRMETTA v. COYKENDALL.

(District Court, N. D. Georgia. November 27, 1926.)

No. 97.

1. Aliens ⬤�377 53—Alien's intention in going into Mexico for 27 days when under bond to answer federal charge held not to abandon domicile.

Alien's intention in going into Mexico for 27 days at time he was under bond to answer federal charge *held* not to have been to abandon domicile, but only for temporary visit.

2. Aliens ⬤�377 53—Alien held not subject to deportation because of being under indictment in federal court at time of alleged entry (Immigration Act 1917, §§ 3, 19 [Comp. St. §§ 4289¼b, 4289¼jj]; Harrison Anti-Narcotic Act [Comp. St. §§ 6287g–6287q]).

Alien *held* not subject to deportation in hearing under Immigration Act 1917, § 19 (Comp. St. § 4289¼jj), as being member of class excluded by law under section 3 (Comp. St. § 4289¼b) as likely to become public charge because of fact that at time of alleged entry he was under indictment in federal court for violation of Harrison Anti-Narcotic Act (Comp. St. §§ 6287g–6287q).

3. Words and phrases—"Moral turpitude" is serious delinquency, measured by general moral standards.

"Moral turpitude" means baseness, and is more than civic deficiency, manifested by breaking known law, being a serious delinquency, measured by general moral standards.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Moral Turpitude.]

4. Aliens ⬤�377 53—Alien held not subject to deportation because of conviction of manufacturing wine within five years previously (Immigration Act 1917, § 3 [Comp. St. § 4289¼b]).

Alien *held* not subject to deportation, under Immigration Act 1917, § 3 (Comp. St. § 4289¼b), for conviction within five years of misdemeanor involving moral turpitude, because of conviction of manufacturing wine in violation of Prohibition Act.

At Law. Application for habeas corpus by Nicholas Skrmetta against M. A. Coykendall. Writ sustained, and applicant dismissed from custody.

Skrmetta is held for deportation and seeks release by habeas corpus. The facts appearing on the trial are these: He has been settled in Biloxi, Miss., since early youth, since 1906, has married, had two children, still living, though his wife is dead, and has always been in good health and had a business regularly followed, which at all times has been sufficient to support himself and family. His character in the community has been above reproach, save that in 1920 he pleaded guilty to making wine, which he claims was for his own use, contrary to the Prohibition Law, and served five months' imprisonment, and in 1924 was under bond to answer a charge of violating the Harrison Anti-Narcotic Act (Comp. St. §§ 6287g–6287q). During July, 1924, he went to Mexico, returning through Brownsville, Tex., where he was detained as not entitled to reenter, and put under bond to answer exclusion proceedings instituted there. Thence he returned to his former home, and eventually pleaded guilty to the narcotic charge, and on the expiration of his sentence therefor was arrested in Atlanta on a warrant for deportation, and after hearing was held under the first clause of section 19 of the Immigration Act of 1917 (Comp. St. § 4289¼jj), as a person who on his entry in 1924 was a member of one or more of the classes of immigrants excluded by law under section 3 (4289¼b), in that he was at the time of entry a person likely to become a public charge, on account of the narcotic case against him, and in that he had, within five years, been convicted of a misdemeanor involving moral turpitude by reason of the sentence for making wine in 1920. Skrmetta claims on these facts that he is not liable to deportation.

Edgar A. Neely, of Atlanta, Ga., for petitioner.

John W. Henley, Asst. U. S. Atty., of Atlanta, Ga., for respondent.

SIBLEY, District Judge (after stating the facts as above). The difference between exclusion and deportation must be held clearly in mind. The proceeding in Brownsville, in 1924, was one for exclusion. To answer to the result of the proceeding there the applicant is still under bond. The proceeding here has no reference to that one, as I construe the situation.

There has been instituted in Atlanta an effort to deport the alien, and it is a hearing on that effort and the holding of him under the warrant initiating it that is under review at the present time. I am laying entirely out of sight the proceeding had at Brownsville, and what ought to result from that, and am considering only whether, under the proceeding in Atlanta, a case is made for deporting this alien as a person who, as alleged therein, entered the United States in 1924, "being a person liable to become a public charge and one who had been convicted of a felony, or a misdemeanor involving moral turpitude." There is no claim that the hearing at Atlanta was unfair; there is not even any dispute about the facts. The contention is that the commissioner arrived at a wrong and an unlawful conclusion under those facts. Gegiow v. Uhl, 239 U. S. 3, 36 S. Ct. 2, 60 L. Ed. 114.

[1, 2] One of the things agitated is whether the applicant ought to be considered as entering the United States in July, 1924. It appears that he had resided continuously in the United States for more than seven years prior thereto; and was under bond to answer a federal charge at the time he left the United States to go into Mexico. He swears that his purpose was to visit Mexico temporarily, for less than 30 days, and he did, in fact, return in 27 days. He remained at liberty some time after returning, apparently answering his bond finally and standing his trial. Under these circumstances I am sure that his own intentions were not to abandon his domicile, but to make only a temporary visit to Mexico and to return to his home. I am not sure, however, that this meets the difficulties in the case, and I do not base my decision upon the proposition that he is not deportable because he has made no entry within the meaning of the statute since the act of 1917. I am of opinion, however, that the grounds for deportation that he was a person liable to become a public charge because of the pending accusation of crime, and that he had committed an offense involving moral turpitude, to wit, the misdemeanor of manufacturing wine contrary to the Prohibition Law, ought not to be sustained. In a broad sense every person who enters the United States is liable to commit a crime and get convicted, and become a public charge as a part of his punishment.

This man had an additional likelihood, in that he had already been indicted, or at least been put under bond, for such an offense. It was an offense for which he might be imprisoned; but still he did not then admit guilt, and the presumption of law was that he was innocent. He had not been convicted, and there was no certainty that the judge would elect to imprison him. I do not think it could be said that it was the purpose of the law to regard such a liability to criminal punishment as being the public charge contemplated by the Congress. I agree rather with the idea that Congress had in mind those who from infirmity, great age, or small age, want of property, shiftless habits, profligacy, or other things, were apparently such persons as would not maintain themselves in society by the ordinary means, and would thereby become a public charge. I do not think that possible criminal punishments were within the intention. It would hardly be fair to say to this man: Notwithstanding you are under bond to return and answer to an offense, we will exclude you and forfeit your bond, on the one hand, or, on the other, to say we will admit you and let you answer according to your contract for your crime, and then, because you have done so, we will deport you, because you should not have entered. It seems to me to be a hard knot of justice, that ought not to be so disposed of in this particular case.

[3, 4] With reference to the prohibition offense, that was not a felony, but a misdemeanor. The question arises whether it was one involving moral turpitude. Moral turpitude means baseness. It is more that the civic deficiency manifested by breaking a known law. It is serious delinquency, measured by the general moral standards of the time and country, of a sort or nature that would be regarded as such, independently of there being any law against it. I realize that standards of morals differ from time to time and at different places, and moral turpitude must necessarily be a somewhat loose expression. We have always divided crimes into those mala in se—that is, those wicked in themselves —and mala prohibita, and I do not believe that in 1920 it could be said that to make alcoholic beverages, although contrary to the prohibition law, was a thing that would have been wicked without the existence of the law, or that would have been generally so regarded in this country at that time.

I am unable to agree, therefore, that the

act with which the applicant was charged, and of which he had been convicted, was one that was a crime involving moral turpitude within the meaning of Congress. One could not imagine any crime that did not involve moral turpitude, if its merely being against the law would constitute it as such. It may be that in time the making of alcoholic beverages, or even the use of them, may become recognized as so greatly hurtful and reprehensible that the violation of the law prohibiting it will be considered a crime involving moral turpitude; but I cannot think that up to this time such has been the state of moral perceptions in our country, nor the view of the Congress representing it.

I am therefore of opinion that the writ of habeas corpus ought to be sustained, and that the applicant ought to be dismissed from his present custody. An order may be taken to that effect.