**UNITED STATES ex rel. MANDEL v. DAY, Commissioner of Immigration.**

District Court, E. D. New York. April 14, 1927.

1. Habeas corpus ⊜⇒92(1)—District Court, in habeas corpus, may only determine if alien had fair hearing and evidence sustained finding.

District Court, in habeas corpus proceeding to secure cancellation of warrant of deportation, may only determine whether alien had a fair hearing, if there was any abuse of discretion on part of administration officials, and if there was any evidence to sustain finding; there being no judicial power to review or reverse finding of fact based on evidence.

2. Aliens ⊜⇒54(9)—Evidence held not to show that alien had become public charge within five years after entry (Immigration Act 1917 [Comp. St. § 4289¼a et seq.]).

In habeas corpus proceeding to secure cancellation of warrant of deportation, evidence *held* not to show that alien had become public charge within five years after entry into United States from causes not affirmatively shown to have arisen subsequent thereto, in violation of Immigration Act 1917 (Comp. St. § 4289¼a et seq.).

3. Aliens ⊜⇒53—Probability of alien becoming public charge at time of entry is dependent on whether alien was suffering from mental defect at such time (Immigration Act 1917 [Comp. St. § 4289¼a et seq.]).

Whether alien was person likely to become public charge at time of entry into United States, in violation of Immigration Act 1917 (Comp. St. § 4289¼a et seq.), is dependent on fact of whether such alien was suffering from mental defect at time of entering.

4. Aliens ⊜⇒54(9)—Evidence held not to establish that alien at time of entry was suffering from constitutional psychopathic inferiority (Immigration Act 1917 [Comp. St. § 4289¼a et seq.]).

Evidence in habeas corpus proceeding to secure cancellation of warrant of deportation, charging entry in violation of Immigration Act 1917 (Comp. St. § 4289¼a et seq.), *held* not to sustain contention that alien was suffering from constitutional psychopathic inferiority.

**5. Aliens ⬤�net54(15)—Deportation of alien as person of constitutional psychopathic inferiority will not be upheld, in absence of reasons for decision of authorities (Immigration Act 1924, § 23 [Comp. St. § 4289¾kk]).**

Under Immigration Act 1924, § 23 (Comp. St. § 4289¾kk), placing burden on alien of showing lawful entry into United States, action of immigration authorities in ordering alien deported, on ground that at time of entry she was person of constitutional psychopathic inferiority, will not be upheld, in absence of reasons through or by virtue of which decision was arrived at.

At Law. Habeas corpus by the United States, on the relation of Theresa Mandel, against Benjamin M. Day, Commissioner of Immigration, Port of New York, or any other person who has the custody of Theresa Mandel, to secure cancellation of warrant of deportation. Writ sustained, and order of deportation vacated. Alien discharged from custody.

Gallert, Hilborn & Raphael, of New York City, for petitioner.

William A. De Groot, U. S. Atty., and Albert D. Smith, Asst. U. S. Atty., both of Brooklyn, N. Y., opposed.

MOSCOWITZ, District Judge. This is a return on a writ of habeas corpus obtained by Joseph Mandel, father of Theresa Mandel, to secure cancellation of a warrant of deportation. The alien, Theresa Mandel, arrived in the United States on the steamship La France on July 30, 1921, accompanied by her father, mother, and other members of her family, and destined to the home of a sister residing in New York City. She was at that time lawfully admitted after inspection.

The data in the case indicate that she was 24 years old, single, a native and subject of Czecho-Slovakia. From November 7 to November 13, 1925, she was a patient at Bellevue Hospital, under the care of Dr. Gregory. Afterwards she was discharged in the custody of her father. On December 3, 1925, a warrant for her arrest was issued by the Commissioner of Immigration. On or about September 28, 1926, the alien was committed to Central Islip State Hospital, and the warrant was served on her there on December 7, 1926.

Hearings were accorded to the alien on December 7, 18, 28, 1926. At the last two hearings the alien was represented by counsel. On December 28, 1926, the immigration inspector, after a hearing on the testimony, decided that the charges in the warrant had not been substantiated and recommended cancellation of the warrant. On January 13, 1927, W. W. Husband, Second Assistant Secretary of Labor, issued his warrant for deportation, reversing the immigration inspector's report. The petitioners sued out a writ of habeas corpus, stating that there was no evidence in the record sustaining the Secretary of Labor's report. The warrant charged that the alien had been found in the United States in violation of the Immigration Act of February 5, 1917 (Comp. St. § 4289¼a et. seq.), in that—

(1) She had become a public charge in the Bellevue Hospital, New York City, within five years after her entry into the United States from causes not affirmatively shown to have arisen subsequently thereto.

(2) That she was a person likely to become a public charge at the time of her entry.

(3) She was a person of constitutional psychopathic inferiority at the time of her entry.

[1] The court can go no further than to see if the alien had a fair hearing, if there was any abuse of discretion on the part of administration officials, and if there is any evidence to sustain the finding. The main question is: Was there any evidence upon which the finding was based? The mere fact that the court feels that the evidence is not sufficient for the finding would not lead to a reversal. "There is no judicial power to review or reverse a finding of fact based upon evidence." Low Wah v. Backus, 225 U. S. 460, 32 S. Ct. 734, 56 L. Ed. 1165; Gegiow v. Uhl, 239 U. S. 3, 36 S. Ct. 2, 60 L. Ed. 114; U. S. ex rel. Brugnoli v. Tod (D. C.) 300 F. 913 at page 915.

[2] The first question, whether or not the alien has become a public charge within five years after her entry into the United States from causes not affirmatively shown to have arisen subsequent thereto, has not been sustained. In fact, the government has omitted that count in the warrant of deportation. The government in its memorandum has stated that the question is not necessarily involved in the case. If it were, there would be no evidence to sustain it.

The father sent the alien to Bellevue Hospital after a visit to Dr. Gregory at his private office. The father requested a bill from the hospital authorities, but did not receive one. Later, when he did receive it, he paid it. While the alien is at Central Islip Hospital, the family are paying her expenses. This testimony was adduced before the government inspector at Ellis Island. There is nothing in the record to show that she is a public charge, nor has any evidence been adduced to prove it.

[3] 2. Whether she was a person likely to become a public charge at the time of her entry is dependent upon the fact whether she suf-

fered some mental defect at the time of her entry. Gegiow v. Uhl, 239 U. S. 3, 36 S. Ct. 2, 60 L. Ed. 114.

[4] After a careful perusal of the proceedings, the court finds no evidence to sustain the contention that she suffered from some mental defect at the time of entry, namely, that she suffered from constitutional psychopathic inferiority.

Section 23 of the Immigration Act of 1924 (Comp. St. § 4289¾kk) provides: " * * * In any deportation proceeding against any alien the burden of proof shall be upon such alien to show that he entered the United States lawfully. * * *"

[5] The rule of this circuit is that, in the case of any alien ordered deported on the ground that at the time of his entry he was a person of constitutional psychopathic inferiority, the record must contain evidence as to the previous mental or medical history of the alien. Accordingly, where no reasons whatever are assigned through or by virtue of which the decision was arrived at, the conclusion is that the cause of the alien's psychosis could not have arisen subsequent to the landing, and the court will refuse to uphold the action of the immigration authorities. U. S. ex rel. Brugnoli v. Tod, Commissioner of Immigration (C. C. A.) 300 F. 918.

In the Brugnoli Case, supra, in answer to the question, "State whether or not disabilities described constitute sole cause why alien is a public charge," Dr. Barton said: "Alien began to show signs of mental breakdown upon arrival in this country from Italy, one year prior to her admission to the hospital." That was in 1923, and she entered the country in 1921, This would tend to show that the "first sign of mental breakdown was after arrival."

In the case at bar, the certificate of Dr. Barton, made after the examination at Bellevue in 1925, reads: "Alien, whose intellect is clear and keen, states that for about a year she has been pursued by her former employer through mental telepathy." This examination, made more than four years after the alien's arrival in the United States, would indicate that the first sign of mental breakdown was more than three years after her arrival.

In answer to the question in the present case, "State whether or not disabilities described constitute sole cause why alien is a public charge," the certificate states, "Constitutional psychopathic inferiority and general mental instability at the time of entry." There are no reasons assigned by which the physician shows that the cause of the alien's psychosis could not have arisen subsequent to

the landing, and no statement of previous mental or medical history of the alien.

To the question upon the certificate which reads as follows: "Said disabilities are in my opinion not due to causes arising subsequent to the time when the alien landed in the United States, and I reach this conclusion upon the facts and upon the following processes of reasoning"—there is no answer. In the Brugnoli Case, supra, to the same question there was an answer, and yet the Circuit Court of Appeals, at page 920, decided:

"No facts whatever are stated upon which this answer is based. No reasons whatever are assigned, from or by virtue of which the physician arrived at the conclusion that the cause of relator's psychosis could not have arisen subsequent to landing. Of course, we do not review the merit of expert opinion; but the relator is entitled to an examination upon which such an opinion can be based, and, while we do not suggest either the extent or the limits of such an examination, it is plain, inter alia, that there must be some previous history upon which to predicate the conclusion that the alien, at the time of entry, was a member of one or more of the classes excluded by law. The certificate of the physician does not, in any manner, disclose the condition of the alien at the time of entry nor any facts upon which his opinion as an expert is based."

Since no facts are given, and no processes of reasoning advanced by which the doctor arrived at his conclusion, the writ will be sustained, the order of deportation vacated, and the alien discharged from custody. Settle order on notice.