UNITED STATES ex rel. MARGOLIN v. SHANK.

Civ. No. 2447.

United States District Court
D. Connecticut.

Oct. 26, 1948.

See also 83 F.Supp. 250.

Goldstein & Peck, of Bridgeport, Conn., and Spiro & Levine, of Danbury, Conn. (Louis Halle, of New York City, on the brief), for petitioner.

Adrian W. Maher, U. S. Atty., of New Haven, Conn., and John F. X. McGohey, U. S. Atty., of New York City (Irving H. Saypol, Chief Asst. U. S. Atty., of New York City, of counsel), for respondent.

HINCKS, Chief Judge.

The relator, now before the court on a writ of habeas corpus, on March 6, 1948, following his conviction on a conspiracy indictment in the United States District Court for the Southern District of New York was sentenced to imprisonment for seven months and to pay a fine of $170,000 in seven monthly installments. As a part

of its sentence the court directed that the relator stand committed until the fine be paid.

On October 7, 1948, being still detained by reason of the complete non-payment of his fine, he offered a written and unconditional assignment of all of his property to the United States of America. The instrument of assignment recited that the transfer was made "toward payment" of the said fine: it was completely silent as to the disposition of any excess over and above the amount of the fine if the assigned property on liquidation should yield such excess. The offer of assignment was never accepted by the United States. Notwithstanding, the relator claimed that the effect of the proffered assignment was to qualify him as a poor convict under 18 U.S.C.A. 3569. Accordingly he applied to the Warden for leave to take the poor convict's oath, and, upon the denial of that application by the Warden, pursuant to the statute cited made a similar application to a United States Commissioner who also, after hearing, denied the application and refused to administer the oath. The action both of the Warden and of the Commissioner was based upon the legal conclusion that the proffered assignment unaccepted by the United States was legally ineffective to divest the relator of his estate and hence to bring him within the reach of the statute.

■■ At the threshold arises a question as to the jurisdiction of the court over the subject matter. The government contends that under the applicable statute, 18 U.S.C.A. § 3569, the determination is one expressly confided to the Warden and the Commissioner, successively, whose conclusion may not be reviewed by any court. I hold, however, that the task conferred upon the commissioner, at least by this particular statute, is essentially administrative and hence is subject to review under the Administrative Procedure Act. 5 U.S.C.A. § 1001 et seq. See particularly 5 U.S.C.A. § 1009. Indeed, under Public Law 496, 79th Congress, approved July 10, 1946, 60 Stat. 524, formerly cited as 18 U.S.C.A. § 641, it was expressly provided that the "commissioner or the warden as the examining authority to whom such application is addressed shall *by an appropriate administrative proceeding* inquire into the matter." (Italics added.) To be sure, when the statute just cited was assimilated into the revised Code, 18 U.S.C.A. § 3569, the words italicized in the passage just quoted were omitted. But the reviser's notes plainly indicate all absence of intent to transform by the omission an administrative proceeding into a judicial proceeding: apparently the words were omitted simply because the proceeding was so obviously of an administrative nature that it did not need a label.

■ It is not necessary, however, to predicate jurisdiction upon the Administrative Procedure Act. Without the aid of that statute, if, as his petition seems to say, the relator's continued detainer were the result of an arbitrary and capricious refusal to allow him the benefit of the statute which he invokes or a refusal based upon an erroneous view of the law, the situation would have been one for which, in all absence of other effective remedy, the writ of habeas corpus would at least issue to permit of judicial scrutiny. Chin Yow v. United States, 208 U. S. 8, 28 S.Ct. 201, 52 L.Ed. 369; Bridges v. Wixon, 9 Cir., 144 F.2d 927; Id., 326 U. S. 135, 65 S.Ct. 1443, 89 L.Ed. 2103; Gegriow v. Uhl, 239 U. S. 3, 36 S.Ct. 2, 60 L.Ed. 114; Kabadian v. Doak, 62 App.D.C. 114, 65 F.2d 202; Vajtauer v. Commisioner of Immigration, 273 U. S. 103, 47 S.Ct. 302, 71 L.Ed. 560; Fong Haw Tan v. Phelan, 333 U. S. 6, 68 S.Ct. 374.

■ When we come to look at the merits of the controversy, we notice at once that concededly the relator has an estate of some substance unless his proffered assignment was effective to transfer all his title to the United States. But as to this, it is elementary that the assignment could not have effect without acceptance and, as my finding indicates, no such acceptance was proved. Evidence that officers or agents of the Department of Justice for a time had custody of one or more of the successive versions of the written assignment is wholly inadequate by itself to prove an acceptance.

Thus the conclusion is imperatively required that the relator had failed to demonstrate to the Commissioner that he was eligible to take the oath. That being so, it follows that the relator's continued detainer under 18 U.S.C.A. § 3565 was not illegal and that the writ must be discharged.

I think it proper to observe, however, that such a disposition imposes no such hardship on the relator as his counsel has suggested. Under the Criminal Code, 18 U.S.C.A. § 3565, the fine has the quality of a judgment which "may be enforced by execution against the property of the defendant in like manner as judgments in civil cases." At the hearing here on the writ, there was neither evidence nor representation that the United States as yet had taken out execution and levied upon defendant's estate. If this be so, the defendant had power to sell and convey his assets subject, of course, to the rights of the United States as a judgment creditor (or as a judgment lienor if any of the relator's assets are located in a State in which the right of the United States by virtue of the fine is secured by lien). Thus, so far as appears, if the defendant had promptly upon the imposition of the fine undertaken to sell his assets with provision for the application of the proceeds to the payment of the fine, for aught that appears he would not now be embarrassed by the ownership of assets which disqualify him from taking the poor convict's oath. In this aspect of the situation his continued detainer for non-payment of the fine is not an undeserved hardship but merely the result of his own sluggishness.

Nor is there real substance to the complaint that because of the character of the relator's estate the time required for its liquidation and hence the time when he will become eligible for the oath will be prolonged beyond that contemplated by Sec. 3569 of the Code. It is true enough that the papers attached to his pending petition show that by his voluntary deed of trust prior to his conviction he became an owner of an undivided share in common with trustees for members of his family in a conglomerate mass of property, real and personal, located in New York and Florida and that the partition of his interest in, and an advantageous liquidation of the constituent assets of, the mass may indeed require much time. But there is nothing in the statute which makes his eligibility for the oath depend upon such a partition and liquidation: a transfer of all his estate accomplished by or including a present sale, private or public, of his undivided interest in the mass without partition and without the liquidation of the individual assets, if made bona fide and in recognition of the right of the United States as a judgment creditor and not qualified by any reservation, express or secret, of any interest to himself, would plainly qualify him for the oath under Sec. 3569. If the United States fears that to its prejudice on such a sale the relator's estate might not fetch a price deemed adequate, its remedy is clearly provided by law: under Sec. 3565 of the Code it may as a judgment creditor, at least at any time prior to a sale by the relator, take out execution on the relator's property and itself realize upon the same. If this be done, to be sure, the bare issue of execution under Sec. 3565 will not serve to divest the relator's title and hence be ground for his release. But if, having taken out execution, the United States actually levies on the relator's property then title thereto will pass. And so, when title to all his property has passed, whether to the United States by levy or to third parties by voluntary sale or in part to each, the relator will become eligible for the oath.

Meanwhile, however, it is ordered that the pending writ be discharged and that the relator be remanded for imprisonment according to law.