JOHNSON, Commissioner of Immigration, v. NG LING FONG ex rel. NG WAH SUN.

(Circuit Court of Appeals, First Circuit. January 26, 1927.)

No. 2091.

Aliens ⬡⇒32(8)—Evidence held to show 15 year old Chinese applicant for admission was foreign born son of American citizen.

Evidence *held* sufficient to show that 15 year old Chinese applicant for admission to United States was foreign-born son of citizen of United States, and his deportation was not justified.

Appeal from the District Court of the United States for the District of Massachusetts; James Arnold Lowell, Judge.

Petition for habeas corpus by Ng Ling Fong, on behalf of Ng Wah Sun, applicant for admission to the United States, against John P. Johnson, United States Commissioner of Immigration. From a decree ordering applicant's discharge from custody, respondent appeals. Affirmed.

John W. Schenck, Asst. U. S. Atty., of Boston, Mass. (Frederick H. Tarr, U. S. Atty., of Gloucester, Mass., on the brief), for the United States.

Joseph F. O'Connell, of Boston, Mass., for appellee.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

BINGHAM, Circuit Judge. The applicant, Ng Wah Sun, seeks admission to the country as the foreign-born son of Ng Ling Fong, a citizen of the United States. He arrived at Boston, in company with his alleged father, on December 30, 1925, being then a few days over 15 years of age. The date of his birth was December 12, 1910. He was ordered deported by the Department of Labor (hearings having been had before the Board of Special Inquiry and the Board of Review) on the ground that the respective boards were not satisfied as to his relationship. The order of deportation having been' made, a petition for habeas corpus was brought, and, a return thereto having been made, the District Court on May 24, 1926, after hearing, found that the applicant had not been accorded a fair hearing and ordered the writ to issue. On June 11, 1926, the cause was heard on its merits and on June 15, 1926, the court rendered a decision, in which it found that the claimed relationship was established, and ordered the applicant discharged from custody, and the government appealed.

At the final hearing before the court the applicant and alleged father and oldest brother testified. The government offered no evidence, except the report of the proceedings before the immigration authorities. The only evidence here presented is that contained in the report. Why the additional testimony submitted to the court is not brought here no reason is suggested. The report shows that the applicant and the alleged oldest brother and father testified before the immigration authorities; that the government called no witnesses, but referred to and used certain immigration records made at different times on the departure and the return of the alleged father to and from China, upon the admission of the oldest brother to the country in 1921, and upon the admission in 1920 of a brother some 7 years older than the applicant, who at the time of the hearings before the immigration boards and the court in 1926 was in China.

The testimony of the applicant and of his alleged oldest brother and father, given before the immigration authorities, shows that they were interrogated as to substantially every conceivable thing that occurred or would be likely to have occurred during their lives, of which each could be expected to have had any knowledge; that the applicant was required to testify in great detail as to the time and place of his birth, the place where he was brought up and went to school, the number and names of his teachers, the num-

ber of houses in the village where he lived, the number of occupants in each house, their names and ages, the number of brothers he had, the dates and places of their births, the dates and places of their marriages, if married, the names of their wives, where they came from, the condition of their feet (bound or natural), the number and names of their children, and the dates of their births, and many other things too numerous to recount. And the record shows that the alleged father and oldest brother, although testifying apart from each other and without knowledge of what the applicant had been inquired about, were in substantial agreement with the applicant as to all these matters; the only matter as to which the applicant differed from them being whether the father, on his last trip to China, remained at home all the time before returning to America, or was absent a portion of the time.

It is claimed on behalf of the government that this single discrepancy was the reason for entering the exclusion order. The record, however, shows that, while the Board of Review gave this as its reason for the exclusion order, that board and the Board of Special Inquiry entertained a suspicion that the applicant's testimony was a "prepared story," although the Board of Review states that there is no proof that it was.

According to the various records kept by the Immigration Department and put in evidence, it appears that the alleged father made a second trip to China in 1909, returning in 1911; a third trip in 1918, returning in 1920; and a fourth trip in 1924, returning in December, 1925; that, in addition to having given statements to the immigration authorities on these occasions, he had testified before these officials in 1920, when his second son Ng Wah Bow, and in 1921, when his oldest son, Ng Wah Tue, applied for and were admitted to the country. These records show that, when the alleged father returned to this country in 1911, he stated that he had three sons, Wah Tue, Wah Bow, and Wah Sun, and gave their ages; that Wah Sun was then about a year old, according to our method of reckoning time; and that at every time thereafter, when departing from the country or returning to it, when interrogated on the subject, the alleged father gave the names of these sons and their ages at the respective times, and the names and the ages of two other sons, born to him after 1911, and who have never applied for admission to the country. The records in the Immigration Department concerning the alleged father and his family since 1909 are so com-

plete, and the statements as to the number and births of his children have been so consistent, through this long period of time, that it is inconceivable that fair-minded men, free from bias and suspicion, should entertain any reasonable doubt as to the relationship of the applicant and the alleged father. We are therefore of the opinion that there was no substantial evidence on which to base the exclusion order, and that the District Court did not err in concluding that the applicant was not accorded a fair hearing.

The decree of the District Court is affirmed.