**UNITED STATES ex rel. FONG LUNG SING v. DAY, Commissioner of Immigration.**

Circuit Court of Appeals, Second Circuit.
January 6, 1930.

No. 67.

Charles H. Tuttle, U. S. Atty., of New York City (Walter H. Schulman, Asst. U. S. Atty., of New York City, of counsel), for appellant.

M. Michael Edelstein, of New York City, for appellee.

Before L. HAND, SWAN, and MACK, Circuit Judges.

L. HAND, Circuit Judge. The relator, Fong Lung Sing, sued out the writ for the applicant, whom he alleged to be his son, being himself a citizen of the United States, concededly born in California. If so, it is agreed that the applicant though born in China was also a citizen, so that his admissibility turns entirely upon the fact of the relator's paternity. The applicant arrived in New York from Canada on April 12, 1928, and was at once given a hearing before a Board of Special Inquiry, at which there were examined the relator, the applicant and an alleged brother. There was also introduced in evidence testimony of the relator, the brother and a second brother at earlier hearings concerning the admission of each. The board was not satisfied that paternity had been shown and excluded the applicant; its finding was affirmed by the Secretary and the writ followed, upon which the District Judge concluded that the variations and inconsistencies relied upon were not enough to discredit the cumulated testimony.

This case is like many which involve the citizenship of Chinese applicants; the facts are wholly within the knowledge of interested witnesses, and fabrication can be detected only by the inconsistencies between their versions or inherent contradictions, since the bare narration is seldom antecedently improbable. In such a situation a tribunal charged at once with enforcement of the law and decision upon the facts is apt to assume the rôle of prosecutor and the decision at times appears to be forecast from the start. This is especially true when the reasons given are trivial inconsistencies, irrelevant to the main issue, of a character which would never alone be thought of consequence, were not the witnesses independently suspected and their bias really made the ground of their discredit. On this account there has of late been a greater disposition by courts to demand substantial reasons in the written word for throwing out evidence which on its face appears credible. Johnson v. Damon, 16 F.(2d) 65 (C. C. A. 1); Johnson v. Ng Ling

Fong, 17 F.(2d) 11 (C. C. A. 1); Go Lun v. Nagle, 22 F.(2d) 246 (C. C. A. 9); United States ex rel. Leong Ding v. Brough, 22 F.(2d) 926 (C. C. A. 2); Fong Tan Jew v. Tillinghast, 24 F.(2d) 632 (C. C. A. 1); Ng Yuk Ming v. Tillinghast, 28 F.(2d) 547 (C. C. A. 1); Mason v. Tillinghast, 27 F.(2d) 580 (C. C. A. 1); Gung You v. Nagle, 34 F.(2d) 848 (C. C. A. 9). Yet our review is limited to the substantial fairness of the proceedings, which need only insure opportunity to the applicant to make his proof and to know what evidence he has to meet, and disclose some evidence which more than colorably supports the result, Chin Yow v. U. S., 208 U. S. 8, 28 S. Ct. 201, 52 L. Ed. 369; Kwock Jan Fat v. White, 253 U. S. 454, 40 S. Ct. 566, 64 L. Ed. 1010; Zakonaite v. Wolf, 226 U. S. 272, 274, 275, 33 S. Ct. 31, 57 L. Ed. 218; Gegiow v. Uhl, 239 U. S. 3, 36 S. Ct. 2, 60 L. Ed. 114; Tisi v. Tod, 264 U. S. 131, 44 S. Ct. 260, 68 L. Ed. 590. This has been long recognized, but we have apparently left behind the notion, so liberally applied to verdicts and to a less degree to the findings of a court, that the board may be warranted in disbelieving an interested witness, or several, because of impalpable evidences which no record can preserve.

In such cases the applicant has the affirmative and the finding is negative; and if we are not to rely upon the record it is impossible to say that it is unsupported by evidence. We must abdicate any review unless we ignore the probative value of what the word does not transmit, and perhaps it is no more than a just corrective for the equivocal position in which the statute places the authorities to say that unless there appear some inconsistencies of substance the case has been made. We recognize the anomaly, but will not depart from the recent body of authority to the creation of which we have indeed contributed. It may result that a well coached team of witnesses who successfully pass the fire of cross-examination will succeed, and yet it seems in practice impossible to avoid that chance unless we are to say that interested witnesses can never make a case, if the board chooses to be incredulous. The opportunity which such a rule would open to bureaucratic preconceptions may be an offset to the instances in which the law will be evaded. At least until the Supreme Court sees fit to declare otherwise it seems best to follow the current of authority.

The relator and putative father, Fong Lung Sing, left this country for the first time in 1892 at the age of eight and stayed in China until he was eighteen years old in 1902, when he entered the United States. He had been married in China whither he returned in 1908, staying until the end of 1910. On his re-entry he was examined in Boston where he swore in answer to the question whether he had any children, that he had one son aged nine and no girl. The applicant had not yet been born and the witnesses on the present hearing gave him a birth date consistent with the period of gestation after the relator had left. They swore however that in 1910 there were three living sons, Fong Bing Thin, Fong Bing Chong and Fong Bing Kwong.

In 1917 Fong Bing Thin applied for admission in San Francisco as the son of the relator, was examined and swore that he had three brothers, Fong Bing Chong, Fong Bing Kwong and the present applicant. The first he said was born in December, 1903, too long after his father's absence to be his child, though the births of the other two as well as of his own fell at proper times. The relator was also examined and corroborated his son, who was thereupon admitted, the inconsistency being however noted between the number of his children as stated in 1911 and those at that time. It was moreover suggested that he might be preparing for the admission of a supposititious son, Fong Bing Chong, then for the first time appearing.

In 1920, Fong Bing Chong did appear at the port of Boston where he swore that he was the relator's son and was corroborated by Fong Bing Thin and the relator, who attributed to him the same birth date as in 1917. He was excluded, both because of the relator's testimony in 1911 and because of certain inconsistencies between the witnesses as to the number of houses in the home village. The fourth son, Fong Bing Kwong, never applied for admission, but is, or was, in Cuba with the excluded Fong Bing Chong.

The testimony upon all these hearings was used at the hearing at bar, and the witnesses were sedulously and minutely examined as to every conceivable detail of the home village and their family relations. They showed a surprising correspondence though there were minor variations, no more than can be reconciled as lapses of memory, except as to the number of houses. As to these and their position and distribution there were indeed inconsistencies somewhat hard to reconcile, though in our judgment scarcely enough alone, had we been the board. All three continued to give the same birth

38

date for Fong Bing Chong, though the relator, when faced with its impossibility, said that he could not recall whether his son had been born in 1902 or 1903.

It appears to us that the story is not so overwhelmingly established as to justify us in saying that the order of exclusion must have proceeded from a determination not to give a fair hearing. We ignore, because it is not necessary to consider them, the minor variations, and rest upon the relator's testimony in 1911, and the birth date of Fong Bing Chong. It is quite true that these do not directly affect the paternity of the applicant who as we have said was not born in 1911 when the relator testified, but it made a complete case against Fong Bing Chong. At common-law the evidence would strictly go no further than to discredit the relator and to a lesser degree, Fong Bing Thin, but in cases like these it is not necessary to cut so fine; indeed in application no jury probably ever in fact makes the distinction. We may take it as affirmatively proved that Fong Bing Chong and Fong Bing Kwong were not sons of the relator, and the board was therefore right, or at least we cannot say that it was wrong, in concluding that the relator and Fong Bing Thin have once tried to run in a putative son and brother. To say that it was bound to ignore the relator's testimony in 1911 or to accept his lame explanation of Fong Bing Chong's birth date, is absurd; there was no possible reason for a mistake in the first, and the second was repeated again and again. The evidence for the applicant therefore comes down to his own, and that too is infected by his claiming Fong Bing Chong as a brother, something which he was bound to know. With the rest we need not concern ourselves for it is enough that on these grounds a board of impartial men might conclude that the applicant's paternity was at least in doubt.

Order reversed; writ dismissed.