UNITED STATES ex rel. LEE KIM TOY v. DAY, Commissioner of Immigration.

District Court, S. D. New York.
Sept. 4, 1930.

Bethuel M. Webster, Jr., and C. F. Weidlich, both of New York City, for relator.

Charles H. Tuttle, U. S. Atty., of New York City (Morton Baum, Asst. U. S. Atty., of New York City, of counsel), for respondent.

PATTERSON, District Judge.

The writ of habeas corpus is sustained.

The question before the Board of Special Inquiry and the Board of Review was whether the applicant, Lee Shew Hong, a fifteen year old boy from China, is the son of Lee Kim Toy. The citizenship of the latter was conceded, so that the applicant was entitled to entry as an American citizen if the claimed relationship exists. In order to test the asserted kinship, the Board of Special Inquiry questioned the applicant, the alleged father, and an alleged brother in minute detail as to a multitude of matters of family history, home life in China, and village characteristics. It seems to me that on the whole the answers of the three witnesses were in striking agreement. Certain discrepancies were brought out, however, and it was on the basis of such discrepancies that the Boards reached a conclusion unfavorable to the applicant.

As I have indicated, the testimony of the three witnesses taken in this proceeding was in the main consistent and convincing. But the real strength of the applicant's case is found in the files of the Department of Labor relating to the alleged father, two alleged brothers, and certain other kinsmen of the applicant. These files, though physically separate, were made part of this record. From these older files, it appears that the alleged father, Lee Kim Toy, was

examined on his return from a visit to China in September, 1915. He then testified that while he was in China another son, Lee Shew Hong, had been born. The applicant claims to be this Lee Shew Hong. It would be pushing beyond the bounds of reason to suppose that Lee Kim Toy in 1915 concocted a story of a fictitious son for use fifteen or more years later. Of equal significance is the fact that Lee Kim Toy on five later occasions, when under examination relative to departures for China and to the admission of two boys claimed by him to be older sons, consistently testified that he had a son called Lew Shew Hong and placed his age at figures consistent with his original statement in 1915. These statements were then purely collateral. They were made many years before the issue whether he had a son known as Lee Shew Hong became a practical and direct one. The two older alleged sons of this man were admitted to the United States, one in 1919, the other in 1923, and both of them testified on every examination that they had a younger brother by the name of Lew Shew Hong. Finally these files show that two other relatives of the alleged father, in earlier proceedings, corroborated him as to the existence of a son called Lee Shew Hong and gave his approximate age. It thus appears that ever since his birth fifteen years ago the Department has been hearing of this Lee Shew Hong. On fourteen separate examinations his alleged father and others have steadily given his name, relationship, and age. It is conceivable that the story was fabricated out of whole cloth back in 1915 and has been reiterated ever since. It is also barely conceivable that the real Lee Shew Hong has died, or, if living, is not desired here by his father, and that this proceeding is an attempt to palm off a changeling as a son. But in my opinion neither of these hypotheses is at all reasonable.

The convincing character of such antecedent evidence has been pointed out by the courts in cases of this type. Johnson v. Ng Ling Fong (C. C. A.) 17 F.(2d) 11, 12; United States ex rel. Leong Ding v. Brough (C. C. A.) 22 F.(2d) 926, 927. The Boards, in my opinion, did not give this proof the weight which it deserves. There is nothing in their findings to show that they gave it any consideration.

The discrepancy chiefly relied upon by the Board of Review arose when the alleged father and the applicant were questioned as to the sons of one Ah Ong, a brother of the alleged father. The alleged father said that his brother had two sons, Shew Wing, age twenty-five, and Shew Sing, age twenty-three, and that so far as he knew they were still in China. The applicant likewise testified that this Ah Ong had two sons and he gave the same names; but he placed the age of one as "younger than I am" and of the other as eight or nine years. He added that he had seen them on the village playground before leaving China. The significance to be attached to this variance as to ages diminishes when we read the testimony of Ah Ong himself, taken in 1929 in another proceeding. Ah Ong then named four sons, Sue Wing, age twenty-five, Sue Sing, age twenty-four, Sue Tung, age eight, and Sue Hong, age 3. It is quite possible, indeed, it is probable, that in the present case the alleged father, who had spent the greater part of his life in this country, recalled only the two older sons of Ah Ong, whose names and ages he furnished correctly, while the applicant knew only the two younger boys, his alleged cousins. The mistake which the applicant made in the names of the younger boys is not serious; it may have been due to an error of the interpreter or the stenographer. The attention of neither the applicant nor his alleged father was called to the testimony of Ah Ong that he had four sons rather than two sons.

Another uncertainty had to do with the Chinese schools attended by the applicant. The alleged father named schools in three places. The applicant at first named only two of these. On being asked specifically as to the third, he said that he "thought" he had attended school there. If his words were accurately translated, this was an odd expression. Yet he proceeded thereafter to give details as to this third school. The fact that leads me to treat this incident as of no great consequence is that the two older alleged brothers, when examined for admission, answered questions as to their schooling in almost precisely the same halting fashion. If the present claim of relationship were a sheer fabrication, the applicant would probably have been coached upon a point as to which the alleged brothers had faltered.

The third discrepancy is as to the matter of a deceased sister. The fact that the applicant had never heard of her has no significance. She died when very young, many years before his birth. The Chinese idea as to female babies being what it is, it is

not a ground of suspicion that the applicant knew nothing of this event in his family. The alleged father contradicted himself as to the existence of this daughter. He first denied that the girl had ever been born and for a time persisted in the denial. Finally he retracted it. The denial may have been due to the fact that he knew the applicant to be ignorant as to the deceased sister and to a desire to have his testimony square with that to be given by the applicant. Whatever his motive may have been, the incident had a bearing upon his credibility as a witness. But it may not arbitrarily be said that all the weighty evidence requiring belief of the claimed relationship of father and son is destroyed by such a contradiction. United States ex rel. Leong Ding v. Brough, supra.

As to the slight discrepancy concerning the birthday of the applicant, I regard it as indicative of good faith rather than of bad faith. If the parties had agreed upon a story, one of the first items to be agreed upon would have been the birthday.

The facts of the present case bring it within the Leong Ding Case, supra, a decision by the Circuit Court of Appeals of this circuit. I cannot find any substantial difference between the two cases. Another controlling case on the facts is Johnson v. Ng Ling Fong, supra, decided by the Circuit Court of Appeals of the First Circuit. The finding that the relationship of parent and child was not established cannot be maintained with any fairness to the applicant, and he should be admitted.