## WONG SHONG BEEN v. PROCTOR.*

No. 7834.

Circuit Court of Appeals, Ninth Circuit.

Nov. 12, 1935.

Adam Beeler and Edwards E. Merges, both of Seattle, Wash., for appellant.

J. Charles Dennis, U. S. Atty., and F. A. Pellegrini, Asst. U. S. Atty., both of Seattle, Wash. (J. P. Sanderson, of Seattle, Wash., U. S. Immigration and Naturalization Service, on the brief), for appellee.

Before WILBUR, GARRECHT, and MATHEWS, Circuit Judges.

*Rehearing denied Jan. 13, 1936.

WILBUR, Circuit Judge.

This is an appeal from an order denying appellant's petition for writ of habeas corpus.

Appellant is of the Chinese race and claims to have been born in Nor You How village, China, on April 29, 1913. He arrived at Seattle, Wash., August 14, 1934, and applied for admission into the United States as a citizen thereof by virtue of being a foreign-born son of Wong Fook, a native-born citizen of the United States. Appellant was accompanied by his alleged father, Wong Fook, and an alleged half-brother, Wong Shong Fay, both of whom were admitted as citizens. Appellant was denied admission by a board of special inquiry at the Seattle Immigration Station on the ground that his claim of relationship to his alleged father had not been established. He appealed from this decision to the Secretary of Labor, who dismissed the appeal and directed that he be returned to China. Thereafter he petitioned the District Court for a writ of habeas corpus.

It is conceded that the alleged father, Wong Fook, is a native citizen of the United States and that he was in China at a time to render his paternity of a child born on April 29, 1913, possible. The only issue involved is whether or not appellant has established the relationship.

The testimony of appellant and his witnesses is in substantial agreement throughout. The denial of appellant's admission is based upon the sworn testimony given by the alleged father on January 17, 1916, before the United States Immigration Office in Vancouver, B. C., upon a hearing on his application for admission to the United States as a citizen. At this hearing he testified as follows:

"Q. How many times have you been married? A. Twice.

"Q. Describe your first wife, and tell when you married her and where she is. A. Gee Shee, 29 years old, natural feet, native of Gee Ok village, Hoy Ping District. I married her in 1906 in China, she died in Sai Toon, SN, China, in 1910, 12th month.

"Q. How many children did you have by Gee Shee? A. Wong Sung Kai, now 9 years old, a son, no daughters.

"Q. Describe your second wife, tell when you married her and where she is. A. Chin Shee, 27 years old, natural feet, born in San Francisco, I married her March, 1911, and she died in Vancouver in November, 1913.

"Q. Where did you marry Chin Shee? A. Seattle, Washington. (Presents marriage certificate showing marriage of Wong Fook, Seattle, Wash., to Miss Chou Why, Seattle, Wash., at Seattle, Wash., April 20, 1911, by Aug. Sandell, Minister.)

"Q. What name was your second wife known by other than Chin Shee? A. On the certificate it is Chou Why but that is a mistake, she belonged to the Chin family and her name was Chin Oi.

"Q. Did you have any children by Chin Shee? A. No.

"Q. Where is your son, Wong Kai, now? A. He is living with my uncle's wife in Sai Toon, SN, China.

"Q. Have you married again? A. No."

Wong Fook, the alleged father, now contradicts his testimony of 1916 in his attempt to have appellant admitted into this country as his foreign-born son. On the hearing before the board of special inquiry at Seattle on August 23, 1934, Wong Fook testified as follows:

"Q. How many wives have you had? A. Two.

"Q. Describe your first wife? A. Gee Shee, natural feet, died in China CR 5. (May 2, 1916.)

"Q. Were you in China when Gee Shee died? A. No.

"Q. Describe your second wife. A. Ong Shee, 38 years old, natural feet, now living in Nor Yon How Village, China, Sai Toon Section.

"Q. Do you understand that you are expected to tell the truth when testifying here today? A. Yes.

"Q. Tell us again how many wives you have had? A. Two, Gee Shee and Ong Shee.

"Q. Did you know that you had another wife at some time? A. No, I never had another one.

"Q. Did you at any time ever claim to have another wife? A. I traveled with a lady friend to Canada and the Canadian law required that we be married in order that she be admitted to Canada— I never married her.

"Q. What was the name of that lady friend? A. Chin Oi.

"Q. Was she known also as Chin Shee? A. Yes.

"Q. Did you go through any form of a marriage ceremony with Chin Shee? A. No.

"Q. The record indicates that you were married at Seattle in 1911 to Chin Shee. A. We obtained a marriage license from the court in Seattle.

"Q. Were you married to Chin Shee after you received the license? A. No.

"Q. After you received the marriage license were you and Chin Shee married by a minister named August Sandell? A. Yes. * * *

"Q. How do you know that Gee Shee died in Republic 5 (1916)? A. I received a letter from China advising me that she died and I left right after that for China.

"Q. When were you married to Gee Shee? A. 4th month, 16th day, American year 1906.

"Q. What month and day did Gee Shee die? A. CR 5-3-20.

"Q. The record shows that you testified Jan. 17, 1916, that your first wife Gee Shee died in 1910, the 12th month, about six years prior to the date you have given today for her death. A. I did not make such a statement at that time.

"Q. Are you able to read English? A. A little.

"Q. I will show you herewith your testimony of Jan. 17, 1916, in which you say that Gee Shee died in 1910, the 12th month. (First sheet of testimony exhibited read by witness.)

"Q. Where is Chin Shee now? A. She died in Vancouver, B. C., in 1913.

"Q. Did you arrange for her funeral expenses? A. Yes, as a friend.

"Q. How was Chin Shee's body disposed of? A. I found that her mother lived in Canton City so I sent her remains back there for burial.

"Q. Do you mean that you had two wives from 1911 to 1916? A. Yes.

"Q. Were any children born to Chin Shee? A. No.

"Q. Were any children born to Gee Shee, your first wife? A. Two sons, no daughters.

"Q. What are their names and ages? A. Shong Ki, 28 years old, and Shong Bin, born CR 2-3-23 (Apr. 29, 1913).

"Q. Were you at home in China when those two alleged sons were born? A. I was in China when Shong Ki was born, but not when Shong Bin was born.

"Q. How long after Shong Bin's birth did you know of his existence? A. About one month after his birth I received a letter from home about it.

"Q. Your testimony of Jan. 17, 1916, shows that you were asked how many children you had by Gee Shee and you replied that you had one son and no daughters and made no reference to Shong Bin, how do you explain that? A. I did mention Shong Bin at that time."

The appellant's appeal to the Secretary of Labor was dismissed on the ground that "the two-fold record contradiction of the relationship now claimed would appear to make it impossible to find that this relationship is satisfactorily or reasonably established." In view of the testimony of the alleged father in 1916 regarding the claimed relationship which was independent evidence on such relationship, we cannot say that the immigration authorities abused their discretion or acted arbitrarily in refusing to believe his subsequent testimony to the contrary. Fong Kong v. Nagle (C. C. A.) 57 F.(2d) 138; Chin Ching v. Nagle (C. C. A.) 51 F.(2d) 64.

Appellant claims an unfair hearing on the ground that the Secretary of Labor refused to reopen the case for the introduction of testimony of three Chinese witnesses, re-examination of the alleged father so that he could explain his 1916 testimony, and the reception in evidence of a family photograph, and that the District Court erred in denying his motion to reopen the case for the introduction of this evidence, together with an additional family photograph. The reopening of a case by the immigration authorities for the introduction of further evidence is a matter for the exercise of their discretion and we cannot interfere unless their action constitutes a denial of due process of law. Appellant and his alleged father were given full opportunity to testify and to present all witnesses and documentary evidence at the original hearing, if they so desired. No allega-

884

tion is made that they were not then available or that their proposed testimony was then unknown. In denying the application, the immigration authorities found that this evidence proposed to be offered could not "reasonably be regarded as overcoming the weight of the sworn statement of applicant's alleged father given on January 17, 1916, that Gee Shee, who is claimed to have become the mother of this applicant on April 29, 1913, had died in 1910 and his further failure to mention such a son as this applicant when in 1916 he was asked regarding the children who had been born of the union of himself and Gee Shee."

There was no denial of a fair hearing.

Order affirmed.