**UNITED STATES ex rel. DARE BOK FUN v. DIRECTOR OF IMMIGRATION AND NATURALIZATION AT PORT OF NEW YORK.**

District Court, S. D. New York.

March 27, 1939.

Jay Abram Darwin, of New York City, for relator.

John T. Cahill, U. S. Atty., of New York City (Ambrose J. Delehanty, Asst. U. S. Atty., of New York City, of counsel), for respondent.

LEIBELL, District Judge.

On October 5, 1938, Dare Bok Dan, a Chinese person, sought entry into the United States at the Port of New York. After hearings before a Board of Special Inquiry on October 28th and December 5th, 1938, he was denied admission as being an alien ineligible to citizenship, and not a member of any of the exempt classes and inadmissible under Section 13(c) of the Immigration Act of 1924, 8 U.S.C.A. § 213(c). The opinion of that Board is hereinafter quoted in full. It summarizes the evidence on the issues and clearly presents the arguments in support of the Board's conclusion. I have examined the various files referred to in the Board's opinion, which were submitted as part of the return to the writ. In my opinion the Board has fairly interpreted the evidence and has reached a just conclusion.

An appeal from the exclusion order of the Board of Special Inquiry was dismissed by the Board of Review on January 18, 1939. The memorandum opinion of the Board of Review will also be hereinafter quoted. I am in agreement with it, except in respect to one statement, which in my opinion was too favorable to the applicant.

A petition for a writ of habeas corpus was filed in this Court by Dare Bok Fun, a brother of the applicant, and a writ was issued directed to the Director of Immigration and Naturalization at the Port of New

York January 27, 1939. On the return to the writ there were submitted the following records of the Immigration Department: (1) Records and proceedings relating to the applicant, Dare Bok Dan; (2) records concerning the applicant's alleged brother, Dare Bok Fun; (3) records concerning applicant's putative father, Dare Heng Thet; (4) records concerning Wong Ack Yen in whose behalf Dare Heng Thet testified as an identifying witness in San Francisco on November 5, 1908; (5) records relating to Wong Yook Hin for whom Dare Heng Thet appeared as a witness in San Francisco on April 5, 1909.

Dare Bok Dan, the applicant for admission to the United States, claims to be the natural born son of an American citizen, Dare Heng Thet, who was a native born citizen of the United States and is now alleged to be deceased.

The facts of the case are set forth in the opinion of the Board of Special Inquiry rendered December 5, 1938, which I quote in full as follows:

"By Chairman:

"As to the United States nativity and citizenship of Dare Heng Thet, the applicant's alleged father: They are res adjudicata and must be conceded. He was discharged in habeas corpus proceedings in the United States District Court, Northern District of California, March 22, 1889, after a trial on the issue of his United States nativity. Certified copies of his court record, including judgments of discharge with his photographs attached—certified to 1895 and 1901, are in S. F. 25223/5–30. This Service recognized him as a native-born United States citizen in connection with five trips to China since 1889. Our records indicate that he was last admitted at San Francisco August 11, 1926. There was admitted, as his son, Dare Bok Fun—at Seattle July 24, 1922 (Seattle 7030/6211).

"As to the claimed relationship: It is claimed that this applicant, Dare Bok Dan, was born in China C.R. 1–12–22 (Jan. 28, 1913). S.F. file 25223–5–30 shows that the alleged father departed from San Francisco Sept. 13, 1910, and upon his return to San Francisco, he was landed Oct. 7, 1912. Apparently the first time thereafter that the alleged father was questioned by this Service as to the makeup of his family was in 1922, when Dare Bok Fun was applying for admission (Seattle 7030/6211), when he accounted for a son 'Dare Bok Din, 11 years old'; at that time Dare Bok Fun claimed to

have a brother having the name and birthdate claimed by and for the applicant. It is conceded that the alleged father may have been in China at a time to make possible his paternity of a person having the birthdate claimed for the applicant.

"Testimony has been taken from the applicant, from Dare Bok Fun, his alleged brother, and from Walter Foonpoos, alias Ng Wing On. There have been considered various related files, including S. F. file 19867/3–5 and S. F. file 10286/122, which contain testimony by the alleged father as to his family that has not been used heretofore, it would appear, in cases involving the alleged father on his trips to China and the admission of Dare Bok Fun. In my opinion, the record has not reasonably established the claimed relationship of father and son asserted to exist between Dare Heng Thet and this applicant.

"Outstanding features of this case follow:

"In the instant case both the applicant and his alleged brother, Dare Bok Fun, claim that the alleged father, Dare Heng Thet, never had more than 2 sons and 1 daughter. The alleged father claimed to have 4 sons and 1 daughter on what appears to have been his last appearance before this Service—in 1926 upon his return from China through San Francisco.

"In 1926, the alleged father claimed that his two youngest sons were Dare Bok Sing, born C.R. 13–6–1 (July 2, 1924), and Dare Bok Hang, or Hong, born C. R. 14–10–12 (Nov. 27, 1925), both located in China. In the instant case, it is claimed that the alleged father's youngest son is the applicant, born C. R. 1–12–22 (Jan. 28, 1913). No reasonable explanation has been ventured for the discrepancies. It is claimed that the alleged father spent all of his time in China between 1923 and 1926, in the six-dwelling village—the Nom Lung Village—where the applicant and his alleged brother are represented to have been born, and where the applicant is alleged to have been living during that period, and since.

"The applicant and Dare Bok Fun claim that the alleged father died in New York City in 1927. Documentary proof of his death has not been furnished. On the other hand, documentary proof has been submitted that a search of the 1927 and 1928 death records of the New York Department of Health fails to locate a record relating to Dare Hing Thet—Dar Yuen Shew, who is said to have died 4th—18th day of January, 1927.

"In my opinion, it is not reasonably established that the alleged father is dead. Furthermore, if it were granted that he is dead, I am of the opinion that Dare Bok Fun reasonably might be expected to know where in New York City his father died, the name of the undertaker, the name of the person or persons who cared for the funeral arrangements, and the place of burial. Dare Bok Fun professes not to know about those matters, and the only explanation he gives for not knowing about them is that he was very young when his father died, and that he does not remember. In this connection, it will be noted that Dare Bok Fun was 15 years and 2 months old in January, 1927, according to the birthdate claimed for him; that at that time he had been in the United States for 4½ years, and that he had had 4 years or so of schooling, in this country, up to the 6th grade.

"At first Dare Bok Fun testified that at the time of his father's death he was living in New York City, at 26 Mott Street, room #8, with Ng Wing On, his friend, who works in the Wing On Wah (Wo) Store, but later he testified that when his father was taken ill he (Dare Bok Fun) was living in Ridgefield Park, New Jersey, and that by the time he reached New York City, his father had died. He claims that he had been living in Ridgefield Park with Ng Foon Nai, a friend of his father, and that he was brought to Chinatown, New York City, at that time by Ng Foon Nai.

"Inasmuch as Ng Wing On and Ng Foon Nai are the only two persons mentioned by Dare Bok Fun who might be in a position to corroborate the claims made as to his father's death, Dare Bok Fun was asked to present them as witnesses. Ng Foon Nai was not produced. Dare Bok Fun testifies that he does not know Ng Foon Nai's whereabouts. Ng Wing On testifies that Dare Bok Fun told him that his father, Dare Yuen Shew, is dead, but that he (Ng Wing On) has no knowledge that Dare Yuen Shew is dead beyond what Dare Bok Fun told him. Ng Wing On states that he never saw the applicant; that he never knew Dare Yuen Shew in China; that he does not know about Dare Yuen Shew's family.

"Tending to indicate that Dare Bok Fun may not be a son of Dare Heng Thet, his alleged father, and therefore that his original admission to the United States was effected through fraud, is his failure to supply the relevant information sought as to the asserted death of his alleged father; his statements that he lived with his alleged father for but 1 or 2 months after his admission; his failure to surrender his alleged father's certificate of identity, and his ignorance of the certificate's whereabouts; his testimony that his alleged father had had in all 2 sons and 1 daughter as against his alleged father's testimony in 1926 that he then had 4 sons and 1 daughter.

"The incredibility of Dare Heng Thet, the applicant's alleged father, is indicated by the following:

"On Sept. 12, 1907, returning from China, he stated that his wife was Sam Shee, a bound footed woman, 34 years old, and that, as to children, he only had 1 daughter, Gim Ying, 2 months old. Newly discovered evidence, San Francisco file 10286/122 shows that at San Francisco, November 5, 1908, the alleged father's examination, in part, was:

" 'Q. What is your wife's name? A. Sen Shee, bound feet.

" 'Q. Have you any children? A. 1 daughter, 2 mos. old.

" 'Q. Have you a son? A. I have a son, but when I was questioned the other time I did not tell.

" 'Q. How old is he? A. 12.

" 'Q. Have you any child born this year? A. No.'

"Additional newly discovered evidence, San Francisco file 19887/3-5 shows that at San Francisco, April 5, 1909, the alleged father's examination in part, was:

" 'Q. Are you married? A. Yes, my wife is Sim Shee, 34, bound feet.

" 'Q. Have you any children? A. 2 sons, one daughter; sons: Dere Pok Lim, 13, in China; Dere Pok Him, 8, in China, girl, Dere Gim Ying, 3.'

"Apparently the alleged father was never confronted with his 1908 and 1909 statements when he offered conflicting testimony thereafter. Both the applicant and Dare Bok Fun claim never to have heard of Dare (Dere) Pok Lim and Dare Pok Him.

"In the past, the alleged father represented that he was married twice; that his first wife, Lee Shee, died May 18, 1901, and that he married his second wife, Sum Shee, October 20, 1901. It was claimed that he never had any children by his first wife, and it is so claimed in the instant case. In this connection, it will be noted that in 1908 the alleged father claimed to have a son age 12, and that in 1909 he claimed to have

a son age 13. Such an alleged son would have been born prior to the time given for his first wife's death.

"I move that this Dare Bok Dan be denied admission as an alien ineligible to citizenship, not a member of any of the exempt classes, and inadmissible under section 13 (c), Immigration Act of 1924.

"By Inspector Zucker: I second the motion.

"By Secretary Sivulich: I concur."

The Board of Review also concluded that the evidence did not reasonably establish that the applicant was the son of his alleged father. In a memorandum filed at the time of said decision the Board of Review states its reasons for its conclusion as follows:

"55996/899    Ellis Island    January 9, 1939.

"In re: Dare Bok Dan, Age 25.

"This case comes before the Board of Review on appeal from denial of admission as a son of a (deceased) native. The relationship is at issue.

"Attorney Charles E. Booth has filed a brief.

"Dare Heng Thet, the alleged father of the applicant, having returned from a trip to China some months before the asserted birthdate of the applicant in January, 1913, claimed to have a son of name and birthdate corresponding with those alleged by and for this applicant at the first subsequent opportunity in Ferbuary, 1922. The alleged father is said to have died in New York City in January, 1927. Dare Bok Fun, older alleged brother of the applicant, who was admitted in 1922 and was last in China between January, 1934, and June, 1935, has appeared as the only witness on the applicant's behalf, although testimony has also been taken from Walter Foonpoos or Ng Wing On, an alleged acquaintance. The testimony discloses what would seem to be vitally serious discrepancies with that given in the past by the alleged father of the applicant which do not seem to be reconcilable with the proposition that this applicant and that alleged father have been members of the same family and were related as claimed.

"From the record it appears that in April, 1909, the alleged father of this applicant testified that he had two sons, Dere Pok Lim, age 13, and Dere Pok Him, age 8. Neither this applicant nor. his witness alleged brother appears to have any knowledge that their alleged father ever had two such sons. It might be said that since the applicant's witness alleged brother is asserted to have been born in 1911 and this applicant is asserted to have been born in 1913 those two older alleged sons of their alleged father might possibly have died in infancy and that neither this alleged brother nor the applicant might necessarily have knowledge that their alleged father ever had two such sons. This, however, cannot be reasonably said concerning the following record fact. This alleged father is shown to have departed for China in March, 1923, and on his return from that trip in August, 1926, he stated that while in China on that trip two sons, Dare Bok Sing and Dare Bok Hong, had been born of the union of himself and Sim Shee in the Ling Nom Village where at that time this applicant is claimed to have been living and to which village and home this witness alleged brother claims to have gone in 1927. This applicant testifies, as does his witness alleged brother, that their parents never had any such sons as Dare Bok Sing and Dare Bok Hong nor any other children younger than themselves. Whether that claim by the alleged father in August, 1926, to have those two younger sons was false or not, disagreement between his description of his claimed family and that given by this applicant would seem to be fatal to this applicant's own claim to be that alleged father's son.

"There has been brought out in the investigation such a lack on the part of the witness alleged brother of indication of normal association with his alleged father as to give rise to reasonable doubt regarding his being in fact a son of the man as whose son he was admitted. While this does not amount to affirmative proof that the alleged brother obtained his admission by fraud, it must be regarded as tending to weaken the support which this witness alleged brother's testimony might give to the applicant's claim.

"It is not believed that the evidence reasonably establishes that this applicant is a son of his alleged father.

"It is, therefore, recommended that the appeal be dismissed.

"EJW/WS    Thos. G. Funicane
                    Acting Chairman.

"Concur:    .    So Ordered:
"L. Paul Winnigs    Turner W. Battle
"Acting Deputy    Assistant to the
Commissioner    Secretary."

The Board of Special Inquiry properly commented on the fact that Dare Bok Fun testified that he lived with his father, Dare

Heng Thet in Washington for only a few months after being admitted to this country in 1922. He claimed that his father sent him to live with a friend of his father's, Ng Foon Nai, at Ridgefield Park, New Jersey; that he lived there for four years; and that Ng Foon Nai brought him to Chinatown, New York City, at the time of Dare Heng Thet's death in January 1927. Apparently there was not any close association of Dare Bok Fun with his putative father during those four years. Further there was no proof offered that Dare Heng Thet died, except Dare Bok Fun's testimony. Official city records do not show that the death was reported at or about the time it is alleged to have occurred. Although the Board requested Dare Bok Fun, on this inquiry, to produce Ng Foon Nai to testify concerning Dare Bok Fun and the death and funeral of Dare Heng Thet, the Board were informed that Dare Bok Fun did not know Ng Foon Nai's whereabouts. Dare Bok Fun's recollection of facts and circumstances of his father's funeral were extremely hazy.

In the opinion of the Board of Review on this present application involving Dare Bok Dan, reference is made to the testimony given by his putative father in April 1909, that he had two sons, Dere Pok Lim, aged 13 and Dere Pok Him, aged 8.

The Board also points out that neither this applicant nor his alleged older brother appear to have had any knowledge of the existence of these two sons. The Board later, however, offers as an explanation that this could be accounted for by reason of the fact that the two older sons, Dere Pok Lim and Dere Pok Him might have died in infancy. I do not see how this could be, with one, Dere Pok Lim, 13 years old and the other, Dere Pok Him, 8 years old, at the time (1909) Dare Heng Thet testified concerning them in the proceeding relating to the application of a friend, Wong Yook Hin for admission to the United States. The present applicant is alleged to have been born in January 1913. Even if we assume that both these two older brothers, Dere Pok (Bok) Lim and Dere Pok (Bok) Him, died before Dare Bok Dan was born or during his infancy, it is not unlikely that he would have heard of them from his mother. As the present record stands, the applicant, Dare Bok Dan, does not know of four sons claimed by his father, the two older brothers, Dere Pok Lim and Dere Pok Him,

and the two younger brothers, Dare Bok Sing and Dare Bok Hang.

If the statements of the father, Dare Heng Thet, are considered as true in respect to these four additional sons, then certainly the Board was justified in holding that both the present applicant, Dare Bok Dan, and his brother, who vouched for him, Dare Bok Fun, should have known of these four other children. If the statements of Dare Heng Thet, the deceased father, are to be considered as false as to these four additional sons, what weight do his statements merit in considering the claim that Dare Bok Fun was his son and that Dare Bok Dan, the present applicant, was also his son? Dare Heng Thet was the only witness for Dare Bok Fun, when the latter was admitted in July 1922.

The petition of Dare Bok Fun on the writ of habeas corpus in this present matter contains the following explanation in relation to the failure of himself and his brother, Dare Bok Dan, to recall the two youngest children of their father, Dare Heng Thet. The explanation he gives is contained in paragraph 5(b), reading as follows: "The records disclose that my father was last in China from 1923 to 1926. He testified in 1926, returning, that he had two young sons, Dare Bok Sing, born July 2, 1924; and Dare Bok Hong, born November 27, 1925. The applicant and I state at this time that there are no young children in the family, and that they and a sister are the only children of Dare Heng Thet. I was in China from 1927 to 1928, and again from 1933 to 1935, and I certainly would know about such children, if they had been living in the family home when I visited there at the times indicated. The applicant has lived in the family home since his birth in 1913, and he too would know about these children, even more definitely than I. It is believed that these young children probably died shortly after the father gave his testimony at Seattle in 1926, and that the applicant probably has forgotten most of the details with respect to their names and dates of birth, and therefore feared to testify regarding them. This is not unusual, particularly in view of the reluctance of Chinese to remember or talk about deceased relatives. It seems to be rather conclusively established by the evidence that the applicant and I are sons of Dare Hing Thet, and therefore our lack of knowledge at this time of the two young children named in

1926, must be due to the circumstances above stated."

In my opinion this explanation is very weak.

■ In a proceeding of this kind where the applicant is seeking admission to the United States, the burden is on him to justify his demand for admission and to submit satisfactory proof of his citizenship. United States ex rel. Polymeris v. Trudell, 284 U.S. 279, 52 S.Ct. 143, 76 L.Ed. 291.

■ The right of the Court to review the acts of the Commissioner of Immigration is limited, as was stated by Judge Learned Hand in United States ex rel. Fong Lung Sing v. Day, 2 Cir., 37 F.2d 36, at page 37: "Yet our review is limited to the substantial fairness of the proceedings, which need only insure opportunity to the applicant to make his proof and to know what evidence he has to meet, and disclose some evidence which more than colorably supports the result, Chin Yow v. U. S., 208 U.S. 8, 28 S.Ct. 201, 52 L.Ed. 369; Kwock Jan Fat v. White, 253 U.S. 454, 40 S.Ct. 566, 64 L.Ed. 1010; Zakonaite v. Wolf, 226 U.S. 272, 274, 275, 33 S.Ct. 31, 57 L.Ed. 218; Gegiow v. Uhl, 239 U.S. 3, 36 S.Ct. 2, 60 L.Ed. 114; United States ex rel. Tisi v. Tod, 264 U.S. 131, 44 S.Ct. 260, 68 L.Ed. 590."

Mr. Justice Hughes in Tang Tun v. Edsell, 223 U.S. 673, 32 S.Ct. 359, 361, 56 L.Ed 606, defines the limitations on the powers of the Court when reviewing the decisions of the executive officers in immigration cases, as follows: "And if it does not affirmatively appear that the executive officers have acted in some unlawful or improper way and abused their discretion, their finding upon the question of citizenship must be deemed to be conclusive, and is not subject to review by the court. * * * The record fails to show that their authority was not fairly exercised, that is, consistently with the fundamental principles of justice embraced within the conception of due process of law. And, this being so, the merits of the case were not open to judicial examination."

In my opinion the discrepancies in this case as established through the other official records in the files of the Department, were such as to justify the Board of Special Inquiry and the Board of Review in reaching the conclusion that the evidence did not reasonably establish that the applicant, Dare Bok Dan, was the son of his alleged father, Dare Heng Thet.

■ "The immigration officials must necessarily base their decisions upon conflicts or agreements that arise in the testimony of applicants for admission and that of their witnesses." Ex Parte Wong Foo Gwong, 9 Cir., 50 F.2d 360, 362.

The Board of Special Inquiry afforded the applicant a fair hearing. He was represented by an attorney. The record of the proceeding contains evidence which more than colorably supports the conclusions reached by the Board. United States ex rel. Fong Lung Sing v. Day, 2 Cir., 37 F.2d 36. Special counsel filed a brief for the applicant with the Board of Review.

■ The Board had the right to consider other official records in their files to ascertain whatever they might disclose as having a bearing upon the disposition of the case. See, Ex Parte Wong Foo Gwong, 9 Cir., 50 F.2d 360, 361, in which it was stated that "it was not improper for the immigration officials to refer to their past records in order to determine the weight to be given to the testimony of the alleged father, Wong Sheh Woo."

I am of the opinion that the decisions reached by the Board of Special Inquiry and the Board of Review in the present case were correct. The writ of habeas corpus is dismissed and the alien is remanded to the custody of the Commissioner of Immigration and Naturalization at Ellis Island, New York Harbor, New York.