## LEE CHOCK HON v. PROCTOR, Commissioner of Immigration and Naturalization.

### No. 9417.

Circuit Court of Appeals, Ninth Circuit.

May 28, 1940.

Adam Beeler and Edwards Merges, both of Seattle, Wash., for appellant.

J. Charles Dennis, U. S. Atty., and Gerald D. Hile and Gerald Shucklin, Asst. U. S. Attys., all of Seattle, Wash. (J. P. Sanderson, Immigration and Naturalization Service, of Seattle, Wash., on the brief), for appellee.

Before GARRECHT, HANEY, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

The appeal is from an order denying a writ of habeas corpus, following appellant's exclusion by the immigration authorities at the port of Seattle.

Appellant, a Chinese person, claims to have been born in San Francisco on February 24, 1918. He arrived from China at Seattle in May, 1939, and applied for admission as a native-born citizen of the United States. After a hearing before a board of special inquiry appellant's application for admission was denied. He appealed to the Secretary of Labor, and the order of exclusion was affirmed by the Board of Review.

In support of his claim of citizenship appellant presented a citizen's return certificate (Form 430) with photograph attached, issued by the immigration service at San Francisco September 3, 1919, in the name of Lee Chock Hon. An endorsement thereon showed a departure of the holder on December 27, 1919. It is agreed that if appellant is the person represented in

the photograph attached to the citizen's return certificate he is entitled to admission; otherwise, he is not. The immigration authorities decided that he is not the same person; and the only question here is whether the decision is supported by substantial evidence.

Appellant himself, his supposed father and mother, and certain of his alleged sisters and brothers, testified in his behalf at the hearing before the Seattle board. Briefly, the showing was that in December, 1919, after the issuance of the citizen's return certificate, appellant was taken to China by his parents, where he remained continuously until his return to the United States in 1939. The parents had meanwhile come back to this country, leaving appellant with relatives.

The photograph attached to the certificate was taken when the individual portrayed was an infant less than two years of age. The members of the local board of inquiry were agreed that a comparison of appellant's appearance with that of the infant represented in the photograph shows that the two are not the same person. The finding appears to rest chiefly on differences in the contour of the ears. The Board of Review agreed that these differences "are so radical as to make it unreasonable to believe that they could be the result of changes which normally could be made by the passage of time". The reviewing board found other less radical differences, as in the space between the eyes. It further called attention to the fact that the principal witnesses for appellant, his alleged parents, had been completely discredited by the record of their importation in 1918 of a purchased female child as a slave prostitute, under the guise of her being their daughter.

As has again and again been pointed out, the courts may not substitute their judgment for that of the immigration boards on matters of fact. Unless it appears that the applicant has been denied a fair hearing, the factual decisions of the immigration authorities are final if supported by any substantial evidence. Del Castillo v. Carr, 9 Cir., 100 F.2d 338, 339; Wong Gim Ngoon v. Proctor, 9 Cir., 93 F. 2d 704; Gee Nee Way v. McGrath, 9 Cir., 111 F.2d 326 decided April 19, 1940. Appellant does not claim he was denied a fair opportunity to present his proof.

Based on statements made by Bertillon in his System of Identification, English translation (1896), there was considerable argument pro and con concerning the validity of comparisons between the 1919 picture and a photograph of appellant made in 1939, both of which are here as exhibits. The photographs, appellant urges, were taken from different angles, with different backgrounds and different illumination. Attention is called to M. Bertillon's emphasis of the fact that the contour of the ear can be made the object of reliable comparison only on photographs taken in the same position, and, especially, in profile.

It would be idle to consider this phase of the argument in detail. Enough to say that the Seattle authorities had before them not only a photograph of appellant, but appellant himself. They were in position to observe his features and the contour of his ears from every angle and thus had ample opportunity, doubtless availed of, to make just and fair comparisons.

Affirmed.