O'CONNELL ex rel. KWONG HAN FOO v. WARD, Com'r of Immigration.

No. 3737.

Circuit Court of Appeals, First Circuit.

March 10, 1942.

Joseph F. O'Connell, of Boston, Mass. (Joseph F. O'Connell, Jr., of Boston, Mass., on the brief), for appellant.

William J. Koen, Asst. U. S. Atty., of Boston, Mass. (Edmund J. Brandon, U. S. Atty., of Boston, Mass., on the brief), for appellee.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

WOODBURY, Circuit Judge.

This is an appeal under 28 U.S.C.A. § 463(a) from an order of the District Court which (1) dismissed a petition for a writ of habeas corpus, (2) discharged the writ, and (3) remanded the relator to the custody of the United States Commissioner of Immigration at Boston.

The relator Kwong Han Foo, otherwise known as Herbert Kwong, presented himself at the port of Boston seeking admission to the United States as an American citizen. The basis for his claim to citizenship, and hence admission to this country, is that he is the foreign born son of one Kwong Bing King, an American citizen by birth, whose citizenship has been conceded by the immigration authorities. A Board of Special Inquiry sitting in Boston, hereinafter referred to as the Board, after hearing, excluded Herbert on the ground that he had not satisfactorily established his relationship to Kwong Bing King, and this decision was affirmed on appeal by a Board of Review in Washington. This petition for a writ of habeas corpus on behalf of Herbert was then seasonably filed in the District Court. In the petition it is set out that Herbert is an American citizen and as such has the right to enter the United States, but instead of granting him that right the Commissioner of Immigration is holding him in custody pending an opportunity to place him on board a ship for deportation to China. The petition alleges that Herbert "is unlawfully restrained of his liberty for the following reasons:

"(1) That he has not had a fair hearing on the question of his right to enter the United States, by the Board of Special Inquiry;

"(2) That the said Commissioner of Immigration and the Board of Special Inquiry in ordering his deportation, is not warranted by law and acted in an arbitrary and unreasonable exercise of authority;

"(3) That the said Kwong Han Foo has been denied due process of law and has further been denied a fair hearing before the said Board of Special Inquiry;

"(4) That the said Commissioner of Immigration and the said Board of Special Inquiry have exceeded their authority in the manner of conducting the hearing on the right of the said Kwong Han Foo to enter the United States."

The petition is defective and properly should have been dismissed unless amended for the reason that the only allegations therein showing unlawful restraint are mere conclusions of law and not statements of fact. 28 U.S.C.A. § 454; Craemer v. Washington, 168 U.S. 124, 18 S.Ct. 1, 42 L.Ed. 407; United States v. Ju Toy, 198 U.S. 253, 25 S.Ct. 644, 49 L.Ed. 1040. In addition the relator should have attached to his petition a full record of the proceedings under which he is being held, or else set out the essential parts thereof in his petition. Craemer v. Washington, supra; Low Wah Suey v. Backus, 225 U.S. 460, 472, 32 S.Ct. 734, 56 L.Ed. 1165. However, courts should not view petitions of this sort with eyes focused only on technical niceties of pleading and procedure. The Commissioner has not done so and neither did the court below, and at the hearing there the Commissioner produced and filed all the departmental records in the case. We therefore have the facts before us and so we shall proceed to consider the substantive questions in the case, (United States v. Ju Toy, supra), in so far as our powers of review permit.

The scope of judicial review in cases of this sort is very narrow.

"It is fully settled that the decision by the Secretary of Labor, of such a question as we have here, is final, and conclusive upon the courts, unless it be shown that the proceedings were 'manifestly unfair,' were 'such as to prevent a fair investigation,' or show 'manifest abuse' of the discretion committed to the executive officers by the statute, Low Wah Suey v. Backus, supra, or that 'their authority was not fairly exercised, that is, consistently with the fundamental principles of justice embraced within the conception of due process of law,' Tang Tun v. Edsell, 223 U.S. 673, 681, 682, 32 S.Ct. 359, 363, 56 L.Ed. 606. The decision must be after a hearing in good faith, however summary, Chin Yow v. United States, 208 U.S. 8, 12, 28 S.Ct. 201, 52 L.Ed. 369, and it must find adequate support in the evidence, Zakonaite v. Wolf, 226 U.S. 272, 274, 33 S.Ct. 31, 57 L.Ed. 218." Kwock Jan Fat v. White, 253 U.S. 454, 457, 40 S.Ct. 566, 567, 64 L.Ed. 1010.

 Since the denial of a fair hearing before the Board cannot be established by merely showing that the decision of the Board was wrong, (Chin Yow v. United States, 208 U.S. 8, 13, 28 S.Ct. 201, 52 L. Ed. 369), the District Court is without jurisdiction to consider the merits of cases like the present until it has been established to that court's satisfaction that the applicant had not been given "a hearing properly so called" by the Board. Chin Yow v. United States, supra; Wong Wey v. Johnson, 1 Cir., 21 F.2d 963; Id., 1 Cir., 23 F.2d 326, certiorari denied 277 U.S. 592, 48 S.Ct. 528, 72 L.Ed. 1004. Thus, since the court below did not find that the hearing before the Board was in any respect unfair, it need not have admitted testimony concerning the applicant's paternity.[1] However, in addition to evidence on the question of paternity, the court permitted the introduction of testimony and other evidence on the question of the fairness of the hearing accorded the relator by the Board, and this obviously was proper, since that was the primary issue before it. Walker v. Johnson, 312 U.S. 275, 285, 286, 61 S.Ct. 574, 85 L.Ed. 830. This latter evidence is before us and we shall now proceed to consider it.

It appears that Herbert, his alleged father, and an alleged older brother named Wilmott, all testified before the Board and their testimony was fully reported stenographically and later transcribed. It also appears that at each stage of the proceedings the applicant was advised as to his rights; that he was permitted to introduce all the evidence he wished on the issue of his relationship to his alleged father; and that he was given full opportunity to explain or rebut unfavorable or conflicting testimony.

Kwong Bing King, the applicant's alleged father, told the Board that he was sixty-nine years old and a native born American citizen. He said that in 1920 he went to China and in October of that year in Hong Kong he married one Chin She. Soon thereafter he and his wife returned to the United States and the following year a son was born to them here whom they named Wilmott. In 1922 they returned to Hong Kong taking Wilmott with them and Chin She has remained there ever since. In 1927 Kwong Bing King returned to this country and between 1928 and 1938 he made several trips back and forth between Hong Kong and the United States.

He testified that Wilmott was born on September 26, 1921; Herbert (the relator), on November 11, 1922; Robert on February 9, 1924; Albert on March 22, 1926, and that several other children have been born to them since. The birth dates of these younger children are immaterial and need not be considered. All of the children except Wilmott were born in Hong Kong. Wilmott and Herbert confirmed their father's testimony as to the dates and places of their birth and as to their parentage, and all three testified that Herbert had always lived in Kwong Bing King's family in Hong Kong and had gone to school there with Wilmott for many years.

In addition to the foregoing all three witnesses were carefully examined in great detail by the Board concerning their family and relations, and the surroundings in which they lived in Hong Kong, which is apparently the customary technique in these exclusion cases, since it is the only way in which immigration officials can be sure that the testimony of an applicant and his witnesses is not fabricated. c.f. Johnson v. Ng Ling Fong, 1 Cir., 17 F.2d 11; Go Lun v. Nagle, 9 Cir., 22 F.2d 246.

---

[1] In spite of receiving testimony on the merits the District Court in its memorandum of decision said: "No evidence being adduced at the hearing on the writ which could tend to prove a denial of a fair hearing, this Court is without authority to pass de novo on the merits of the case." 38 F.Supp. 689, 690.

Their testimony is in substantial agreement concerning the houses in Hong Kong in which they from time to time lived, the streets and buildings in the neighborhood of those houses, the school which Wilmott and Herbert attended, their schoolmates, playmates and neighbors. It appears to be conceded that the discrepancies in their testimony on these collateral matters are minor and inconsequential.

 So far the only evidence is that Herbert is the son of Kwong Bing King,[2] but the Board had before it and gave consideration to statements made to immigration officials by the latter on the occasion of trips to and from Hong Kong made by him in 1927, 1928, 1930 and 1938. The department's records include these statements as written down by immigration officials and from them it appears that in March, 1927, when Kwong Bing King returned to this country from Hong Kong, he gave his children as follows:

| Name | Date of Birth |
| --- | --- |
| Wilmott | Born September 22, 1921 |
| Robert | Born February 9, 1924 |
| Albert | Born March 2, 1926 |
| Son (unnamed) | Born January 27, 1927. |

In pre-investigation preceedings preliminary to a trip to Hong Kong in May, 1928, Kwong Bing King testified concerning his family as follows:

| Name | Date of Birth |
| --- | --- |
| Wilmott | Born September 22, 1921 |
| Robert | Born February 9, 1924 |
| Albert | Born March 22, 1926 |
| Herbert | Born March 2, 1927 |

Upon his return from this trip on January 6, 1930 he stated that there had been no change in his family, and on March 29 of that year, when he was again pre-investigated preparatory to another trip to Hong Kong, he gave his four sons exactly as he had given them in May, 1928. But on April 5, 1938, upon his return from this trip, he gave the names and ages of his four elder sons as

| Name | Date of Birth |
| --- | --- |
| Wilmott | Born September 22, 1921 |
| Herbert | Born November 11, 1922 |
| Robert | Born February 9, 1924 |
| Albert | Born March 22, 1926 |

The Board's exclusion order appears to have been based solely upon the above discrepancies in Kwong Bing King's testimony concerning the birth date of his alleged son Herbert, the relator here.

 Being an administrative tribunal the Board is not bound by the rules of evidence applicable to trials by jury. It is bound only by reason, logic, and common sense.

"When Congress vested in these administrative tribunals the power of determining family relationship and citizenship, it freed them from the technical methods of proof that courts have, but not from the obligation of seeking the truth with open and reasoning minds." Mason v. Tillinghast, 1 Cir., 27 F.2d 580, 581. The question, then, is whether the Board, in excluding Herbert solely on the basis of the discrepancies in his alleged father's testimony, acted arbitrarily and unfairly, and thus denied Herbert the rights guaranteed to him by the due process clause of the Fifth Amendment. We take the view that this question must be answered in the negative.

 The relator does not, nor can he successfully, contend that his alleged father's testimony at these prior ex parte proceedings was inadmissible for the purpose of showing that Kwong Bing King did not have a son born on November 11, 1922 as claimed. See Tang Tun v. Edsell, 223 U.S. 673, 32 S.Ct. 359, 56 L.Ed. 606. What the relator argues is that this evidence is only negative and as such is insufficient to overcome all the positive evidence before the Board tending to show that he was a son of Kwong Bing King born on the date he claims. He suggests that very possibly his alleged father did not fully understand the questions put to him through the interpreter at these prior proceedings, or was

---

[2] Besides the testimony of the relator, Wilmott, and Kwong Bing King, the relator also introduced an alleged family photograph taken in Hong Kong in 1938 just before the alleged father and son Wilmott left for this country. The relator appears in this photograph with the family. The Board discounted this photograph as evidence of applicant's relationship to Kwong Bing King on the ground that it was taken so recently. The applicant argues that the admitted resemblance between him and his alleged father is in itself evidence of his alleged relationship to Kwong Bing King. While this is true, it is not conclusive evidence. A nephew or a cousin often more closely resembles the father than his own children. Wong Som Yin v. Nagle, 9 Cir., 37 F.2d 893.

620

confused in giving the American names and dates of the births of his sons instead of their Chinese names and dates of birth, or that being the father of a large family he forgot, or that the interpreter misunderstood the alleged father's answer as to the date of Herbert's birth, or that a mistake was made by the stenograher in setting this date down. In other words, the applicant argues that the possibility of one or more of these errors occurring at these prior proceedings makes this evidence so flimsy and unsubstantial that the Board denied him a fair hearing in considering it and disregarding all the favorable evidence tending to establish Herbert's alleged relationship to Kwong Bing King.

This argument may be, in fact in reason, fairness and common sense it probably is, legally sufficient to explain the one minor discrepancy appearing in the alleged father's statements concerning Albert's birthday, but it loses much of its force when applied to the statements concerning Herbert's when it is observed that the dates given by the alleged father as the birth days of his other sons are all identical. With the one minor exception as to Albert, the only discrepancy in any date in any of these prior proceedings concerns the date of Herbert's birth only. This goes far to negative the contention that the alleged father failed to understand fully the questions put to him, or forgot, or that a mistake was made by the interpreter or recorder. Furthermore, a careful examination of the alleged father's answers to all the questions put to him at each one of these prior proceedings in 1927, 1928, 1930, and 1938 shows not the slightest indication that he misunderstood or was confused about any question asked him, and this conclusion is even further strengthened by the fact that it appears from an examination of the departmental files that Kwong Bing King could speak English well as far back as 1903, and on some occasions, on his arrival or departure, the hearing was conducted without any difficulty entirely in English and with no interpreter present. Finally it is to be noted that at the end of each so-called pre-investigation hearing prior to each departure to Hong Kong, when asked whether or not he fully understood all the questions asked him at the hearing, his answer was always in the affirmative.

Taking the above factors into consideration, and in view of the fact that an alleged parent's testimony concerning the birth dates of his children ought, in the absence of official records, to be more reliable than any other, it seems to us that the prior statements of Kwong Bing King concerning the date of Herbert's birth constitutes a substantial contradiction of his oral testimony before the Board, and that therefore the Board in believing such statements did not act so arbitrarily as to deny the relator a fair hearing. In our view the cases of Mason v. Tillinghast, 1 Cir., 27 F. 2d 580, and Ward v. Flynn, 1 Cir., 74 F.2d 145, in each of which the court was called upon to consider the legal effect of only one minor discrepancy in testimony, like the one which appears here with respect to Albert, are not in point, but that the cases in point are Wong Shon Been v. Proctor, 9 Cir., 79 F.2d 881, certiorari denied 298 U.S. 665, 56 S.Ct. 746, 80 L.Ed. 1389; Flynn v. Ward, 1 Cir., 82 F.2d 223; Ngim Ah Oy v. Haff, 9 Cir., 112 F.2d 607, certiorari denied 311 U.S. 686, 61 S.Ct. 63, 85 L.Ed. 443. Since neither this Court nor the District Court can substitute its judgment for that of the immigration authorities when the applicant has had a fair hearing and the excluding decision is based on substantial evidence, (Chin Yow v. United States, 208 U. S. 8, 13, 28 S.Ct. 201, 52 L.Ed. 369; Tisi v. Todd, 264 U.S. 131, 133, 44 S.Ct. 260, 68 L. Ed. 590; Lee Chock Hon v. Proctor, 9 Cir., 112 F.2d 246):

The order of the District Court is affirmed.